Wɪʟsᴏɴ ᴇᴛ ᴀʟ., Aᴘᴘᴇʟʟᴀɴᴛs, v. Tʜᴇ Pᴇᴏᴘʟᴇ ꜰᴏʀ ᴛʜᴇ
ᴜsᴇ, ᴇᴛᴄ., Aᴘᴘᴇʟʟᴇᴇs.

1. Pᴜʙʟɪᴄ Oꜰꜰɪᴄᴇʀ—Bᴀɪʟᴍᴇɴᴛ.

A public officer who receives money by virtue of his office is a bailee, the extent of whose obligation is that imposed by law, and, when unaffected by constitutional or legislative provisions, his duty and liability are measured by the law of bailment.

2. Oꜰꜰɪᴄɪᴀʟ Bᴏɴᴅ—Eꜰꜰᴇᴄᴛ ᴀɴᴅ Pᴜʀᴘᴏsᴇ ᴏꜰ.

The bond given by an officer does not extend his obligation,—its office is to secure the faithful and prompt performance of his legal duties.

3. Oꜰꜰɪᴄᴇʀ's Lɪᴀʙɪʟɪᴛʏ.

A clerk of court who by virtue of his office has custody of money pending process and proceedings is responsible for good faith and reasonable diligence, but if the money be lost notwithstanding an exercise on his part of that care and diligence which prudent men ordinarily exercise with respect to their funds, he is not liable.

*Appeal from the District Court of Fremont County.*

Tʜɪs case was submitted without suit upon the following agreed statement of facts :

The defendant John Wilson was, during the time hereinafter stated, and is now, the duly appointed and acting clerk of the district court of Fremont county, Colorado, and the defendants, S. W. Humphrey, C. S. Topping, and J. H. Harrison, are the sureties on his official bond as such clerk, a true copy of which with the indorsements thereon is herewith attached.

" 2. At various times during the year 1887, the plaintiff, the Pueblo & Arkansas Valley Railroad Company, a corporation organized under the laws of the state of Colorado, and then constructing a line of railroad through Fremont county, paid over to the defendant Wilson, as such clerk, various sums of money fixed and determined by the judge of the said court, by rules entered in certain condemnation proceedings for right of way then pending in the said district court, as deposits pending the ascertainment of damages, and

to authorize the company to take possession of the right of way pending the proceedings, as provided by § 6, as provided by the eminent domain law, page 77, Code of Civil Procedure.

" These moneys were deposited by the defendant Wilson, as received, to his credit as clerk of said court, in the Exchange Bank of Canon City, a private, unincorporated banking institution then doing business at said Canon City, in said county, and reputed to be solvent.

" 3. The said Exchange Bank has failed in business, and its depositors have not been paid. The condemnation proceedings referred to have all been concluded by final decree vesting title in the railroad company, and of the moneys so paid by the railroad company to the said clerk as deposits, the company is entitled to receive back as an excess of the amount so deposited over and above the amounts finally awarded as damages the sum of $2,997.20, which has not been paid.

" 4. *Quære* : Are the clerk and the sureties on his bond liable to the railroad company for the payment of this money ? If yes, let judgment be entered in favor of the plaintiff against the defendants for the amount aforesaid with interest from date of suit ; if no, let judgment be entered for the defendants for costs."

The bond above referred to and indorsed upon this statement is as follows :

" Know all men by these presents, that we, John Wilson as principal and S. W. Humphrey, C. S. Topping and J. H. Harrison, are held and firmly bound unto the People of the state of Colorado, in the penal sum of five thousand ($5,000) dollars, for the payment of which sum of money, we bind ourselves, our heirs, executors and administrators, jointly and severally, firmly by these presents.

" Sealed and dated this twenty-fourth day of May, 1886.

" The condition of the above obligation is such that, whereas the above bounden John Wilson has been appointed clerk of the district court of the third (3d) judicial district of the state of Colorado, within and for the county of Fremont,

" Now, therefore, if the said John Wilson shall faithfully perform all the duties of said office as prescribed by law; that he will punctually pay over to the person legally authorized to receive the same all moneys that may come into his hands by virtue of the said office, and shall deliver to his successor in office all records, books, papers and other things belonging to his said office, then the above obligation to be null and void, otherwise to remain in full force and effect.

> " JOHN WILSON,          [Seal.]
> " S. W. HUMPHREY,          [Seal.]
> " C. S. TOPPING,          [Seal.]
> " J. H. HARRISON,          [Seal.] "

The court below rendered judgment upon this agreed statement of facts in favor of appellees and against the appellants for the sum of $3,180.30 and costs. To reverse this judgment the defendants bring the case here on appeal.

Messrs. MACON & MACON, and Mr. D. P. WILSON, for appellants.

Mr. CHARLES E. GAST, for appellees.

MR. JUSTICE GODDARD. delivered the opinion of the court.

From the agreed facts it appears that the money was lost through no fault of the clerk. He deposited the money in a bank of reputed solvency, as clerk of the court, and in doing so acted as prudent men ordinarily do with their own funds. The judgment of the court below must, therefore, be upheld, if at all, upon the principle that the conditions of his official bond imposed upon him an absolute obligation to pay the money when required, and that no exercise of diligence on his part will exonerate him from such obligation. Such is the contention of counsel for appellee, and for its support he relies on the case of *U. S. v. Prescott*, 3 Howard, 578, decided by the supreme court of the United States in 1845 as the leading case, and several other cases in that court,

as well as some decisions by state courts, which approve and follow the doctrine therein announced.

In these cases in which the rule contended for was sustained, the court had under consideration the liability imposed by the official bond of receivers of public money, and the conclusions arrived at were influenced largely by considerations of public policy. Whether the case at bar is sufficiently analogous to these cases to bring it within the rule therein announced it is unnecessary to decide, since the supreme court of the United States in a later case has very much modified, if it has not in effect overruled, the extreme doctrine laid down in its earlier decisions. In the case of *U. S. v. Thomas*, 15 Wall. 337, Justice BRADLEY, in speaking of the leading case of *U. S. v. Prescott, supra*, said:

" After reciting the condition of the bond, the court adds, with a greater degree of generality, we think, than the case before it required, ' The obligation to keep safely the public money is absolute, without any condition, express or implied; and nothing but the payment of it, when required, can discharge the bond.'

" This broad language would seem to indicate an opinion that the bond made the receiver and his sureties liable at all events.* * *

" And as the money in the hands of a receiver is not his; as he is only custodian of it; it would seem to be going very far to say, that his engagement to have it forthcoming was so absolute as to be qualified by no condition whatever, not even a condition implied in law."

And after reviewing the principal cases relied on by appellee, he further said:

" So much stress has, in almost every case, been laid upon the bond as forming, either directly or indirectly, the basis of a new rule of responsibility, that it seems especially important to ascertain what are the legal obligations that spring from such an instrument. The learned judges in the great generality of the remarks made in some of the cases referred to, with regard to the liability of a receiving officer, and especially

of his sureties, by virtue of his bond, have evidently over-
looked what we conceive to be a very important and vital
distinction between an absolute agreement to do a thing and
a condition to do the same thing, inserted in a bond.   In the
latter case the obligor, in order to avoid the forfeiture of his
obligation, is not bound at all events to perform the condition,
but is excused from its performance when prevented by the
law or by an overruling necessity.   And this distinction, we
think, affords a solution to the question involved in this
case.* * *

"The condition of an official bond is collateral to the obli-
gation or penalty; it is not based on a prior debt, nor is it
evidence of a debt; and the duty secured thereby does not
become a debt until default be made on the part of the princi-
pal.   Until then, as we have seen, he is a bailee, though a
bailee resting under special obligations.   The condition of
his bond is, not to pay a debt, but to perform a duty about
and respecting certain specific property which is not his, and
which he cannot use for his own purposes."

While the majority opinion distinguished the case under
consideration from those preceding it, we think the reasoning
of the learned justice who wrote the opinion logically and
necessarily overrules the doctrine laid down in the former
cases.   If, as therein announced, the obligation imposed by
the bond is absolute, and the officer was an insurer of the
money received by him, how could the manner or cause of
its loss affect his liability?   Wherein is he more at fault when
overpowered by one or two robbers than he is when intimi-
dated by an army?   Justice Miller refused to concur in the
majority opinion because it did not frankly overrule those
cases and abandon the doctrine on which they rested, and in
his dissenting opinion stated his personal views upon the
question as follows:

"When the case of the *United States v. Dashiel* came be-
fore the court I was not satisfied with the doctrine of the
former cases.   I do not believe now that on sound principle
the bond should be construed to extend the obligation of the

depositary beyond what the law imposes upon him, though it may contain words of express promise to pay over the money. I think the true construction of such a promise is to pay when the law would require it of the receiver, if no bond had been given; the object of taking the bond being to obtain sureties for the performance of that obligation. Nor do I believe that prior to these decisions there was any principle of public policy recognized by the courts, or imposed by the law, which made a depositary of the public money liable for it, when it had been lost or destroyed without any fault of negligence or fraud on his part, and when he had faithfully discharged his duty in regard to its custody and safe-keeping."

We believe the true rule is that a public officer who receives money by virtue of his office is a bailee, and that the extent of his obligation is that imposed by law; that when unaffected by constitutional or legislative provisions his duty and liability is measured by the law of bailment. If a more stringent obligation is desired it must be prescribed by statute. That his official bond does not extend such obligation, but its office is to secure the faithful and prompt performance of his legal duties. Instances where the constitution and statutes of this state have increased the common law liability of certain officers have been recognized by this court in two cases at least. In the case of *State of Colorado v. Walsen et al.*, 17 Colo. 170, it was held that by constitutional provisions the state treasurer was made absolutely liable for state moneys received by him; and in the case of *McClure et al. v. Board of County Commissioners of La Plata County*, recently decided, *ante* p. 122, it was held that a county treasurer, by virtue of the statute regulating the duties of his office, was a bailee with express and extraordinary liability.

No constitutional or statutory provision in this state imposes a more stringent obligation upon a clerk of the district court than that imposed by the common law. This rule of common law as laid down by Justice Story is as follows:

" In respect to property in the custody of the officers of a court, pending process and proceedings, such officers are

undoubtedly responsible for good faith and reasonable diligence. If the property is lost or injured by any negligent or dishonest execution of the trust, they are liable in damages. * * * The degree of diligence which officers of the court are bound to exert, in the custody of the property, seems to be such ordinary diligence as belongs to a prudent and honest discharge of their duties, and such as is required of all persons who receive compensation for their services." Story on Bailments, § 620.

It is insisted in argument that this doctrine refers only to specific property, and does not apply to money deposited with the clerk because it is assumed that he holds the relation of debtor to the fund, and therefore may use it as his own. To this we cannot agree. The money received by him is a trust fund, and a conversion of it to his own use would constitute embezzlement and subject him to a criminal prosecution.

The defendant Wilson, as appears from the agreed facts, did not mix the money in question with his own funds, or in any manner treat it as his own. He deposited it in the bank as clerk, and the bank had notice thereby that the money so deposited was held by him in his official capacity. At the time of the deposit the bank was in good standing. We think, under the circumstances, he is not chargeable with any fault that should render him or his sureties liable for the loss. The judgment of the court below will be reversed, with directions to enter judgment for defendants.

*Reversed.*