State, for use, v. Kelly.

STATE OF TENNESSEE, FOR USE OF MARION COUNTY, *v.*
JOHN G. KELLY *et al.*

(*Knoxville.*     September Term, 1903.)

1. **QUARTERLY COUNTY COURT.** Majority of quorum of
   three-fifths may levy taxes or appropriate public moneys.
   Three-fifths of all the justices of the peace of the county must be
   present to constitute a quorum of the quarterly county court
   for the purpose of levying taxes or appropriating public moneys,
   but a majority of those present constituting such quorum and
   court may lawfully levy taxes or appropriate public moneys.
   (*Post, pp.* 586-587.)

Case cited and approved:   Steele v. Blanton, 1 Lea, 514.

Case cited and disapproved:   Brooks v. Claiborne Co., 8 Bax., 43.
Code cited and construed:   Sec. 6019 (S.); sec. 4974 (M. & V.);
sec. 4190 (T. & S. and 1858).

2. **SAME.** Appropriation for salary of county judge is legal
   without entry on claim docket.
   The salary or compensation of a county judge is not such claim
   as must be presented and entered on the claim docket thirty
   days before the meeting of the quarterly county court in order
   to make an appropriation therefor valid and legal. (*Post, p.*
   589.)

3. **STATE REVENUE AGENT.** May institute suit in name of
   State for use of county against county judge for misappro-
   priations and for improper disbursements.
   A suit in the name of the State for the use of a county may be
   instituted and prosecuted by a state revenue agent, without
   the district attorney-general joining therein, against the county
   judge of such county for revenue and debts owing the county
   collected by him, and not accounted for, and for the county's

money wrongfully paid out by him as financial agent, requiring him to account and settle as manager and custodian of the public finances and funds. Such suit may be maintained to recover the amount paid over to such county judge by a back tax attorney. (*Post, pp.* 587-591.)

Case cited and approved:   State v. Spurgeon, 15 Pickle, 664.

Acts cited and construed:   1901, ch. 174, sec. 81.

---

FROM MARION.

---

Appeal from the Chancery Court of Marion Cunty.— T. M. MCCONNELL, Chancellor.

CHARLES C. MOORE, for complainant.

SPEARS, HALL & SPEARS, and BRYON POPE, and BROWN & SPURLOCK, for defendants.

---

MR. JUSTICE WILKES delivered the opinion of the Court.

This bill was filed in the name of the State of Tennessee for the use of Marion county against John C. Kelly, county judge of Marion county, and his sureties upon his official bond.   It is signed and filed by John D. Caldwell, revenue agent for the State, and Charles C. Moore, his solicitor.   It charges in general terms that the defend-

ant as county judge of Marion county wrongfully appropriated and paid out various sums of money as the financial agent of the county without any lawful authority. Specifically it charges that the salary of this judge was fixed by the statute at $500 per annum; but that there was paid to him out of the county treasury for each of the years 1896-7-8 $1,200 as such salary; and that this was done without the vote of three-fifths of the members of the county court of Marion county elected and entitled to attend that court; again for the years 1899, 1900 and 1901 there was paid to him the sum of $1,700 as salary each year by a like vote of less than three-fifths of the members elected and entitled to attend; and it is alleged and charged that the amounts paid to him in excess of $500 were illegally appropriated and paid; again it is charged that on May 27, 1896, Jeptha Bright was due the county of Marion the sum of $800 collected by him as back-tax attorney, and on February 17, 1898, the defendant Kelly as revenue agent for Marion county compromised this claim for the sum of $488, and received that amount from Bright in satisfaction of the county's claim against him; that of this $488 the defendant paid to Ralston, the county trustee, the sum of $375, and retained the remainder of $113, and thereby rendered himself liable for either the whole amount of the said $800 and interest, or in any event for the $113 and interest; again it is alleged that in 1895 Bright and Cook as back-tax attorneys for Marion county paid over to the defendant Kelly for the benefit

of Marion county $3,301.03, revenue collected, and that of this amount Kelly misappropriated and failed to pay over the sum of $564.56. It was further charged in the bill that the defendant Kelly did not file his claims against the county and with the county court one month before the time appropriations were asked to cover them as required by law, and hence the appropriations were illegal.

The bill prayed for an accounting and a judgment against Kelly and his securities with interest.

The bill was demurred to upon various grounds. The first question raised upon the demurrer is whether the appropriations for the years 1896-7-8-9 were properly and lawfully made. It is insisted that they were not; because three-fifths of the magistrates constituting the entire county court did not vote for the appropriations. This insistence is based upon sec. 6019 of Shannon's Compilation of the statutes, which reads as follows: "Three-fifths of the justices entitled to attend shall be required to levy a tax, or to appropriate public money." And the question presented is, whether this section merely requires an attendance of three-fifths of the justices to constitute a quorum sufficient to pass on such questions; or whether three-fifths must vote affirmatively in favor of the appropriation.

In *Brooks* v. *Claiborne County*, 8 Baxt., 43, decided in 1874, it is held by this court, Sneed, Judge, delivering the opinion, that this section as then existing required an affirmative vote of a majority of all the justices

elected. This section was subsequently amended so as to provide for a three-fifths instead of a majority vote.

In the case of *Steele* v. *Blanton,* 1 Lea, 514, decided in 1878, this court, speaking through Chief Justice Deaderick, held that there must be present a quorum consisting of a majority of all the justices in the county to constitute a legal court capable of levying taxes, or making appropriations; but that a majority of those present constituting such a court might lawfully levy taxes.

There is no difference between the power to levy taxes and the power to appropriate money out of the treasury.

These cases appear to be in conflict. The case of *Steele* v. *Blanton* is the latest utterance; and the court of chancery appeals felt bound thereby; and held that it appeared that the appropriations attacked had been made by a court consisting of more than three-fifths of those elected and qualified as justices of Marion county; and that the appropriations had been made by a majority of those present; and were legal and valid, and not subject to the attack made upon them. We concur in this view; and it follows there was no error in sustaining the first ground of demurrer by the chancellor and the court of chancery appeals as to this feautre of the case; and their decree is affirmed.

The second assignment of error is that the chancellor erred in holding that John D. Caldwell, as revenue agent, had no authority to bring this suit; and that it should have been brought by the district attorney-general.

The authority for bringing these suits by the complainant Caldwell depends upon the Acts of 1901, chapter 174, sec. 81, which provides among other things, for the appointment by the comptroller of three revenue agents from the three different divisions of the State, and defines their powers and duties.

This act provides, among other things, that it shall be the duty of these agents to examine the records of all officials charged with the collection of State, county or school revenue, or any one who collects county revenue without authority of law; and also all disbursements from the State or county revenues; and to investigate, when necessary, all bills of cost, fees or other items certified to the State or county for payment out of the State or county treasury; and if either of said agents shall have reason to believe that any officer charged with the collection or disbursement of State or county revenue is not properly collecting or disbursing such revenue, or accounting for the same according to law, the agent shall make such investigation independent of any instructions from the comptroller, and he may do so at the request of any taxpayer.

The terms of this act are broad enough to cover accounts of financial officers who are charged with the collection or disbursement of public revenues; and the act gives the agents the right to bring suit by motion, or otherwise against any delinquent officer in the name of the State.

We are of the opinion that this statute is remedial in

State, for use, v. Kelly.

its nature, and that it is broad enough to embrace the county judge within its terms. And the court of chancery appeals was correct in holding that the complainant did have the right to bring such suit; and the chancellor was in error in denying such right.

We are of opinion that an appropriation for salary of the county judge is not such a claim as must be presented and entered on the claim docket thirty days before the meeting of the court in order to make the appropriation valid and legal.

It is said that the court erred in sustaining the thirteenth ground of demurrer, which was that the revenue agent did not have authority to recover from the county judge the balance of $113 paid over to him by the back-tax attorney Bright, and not accounted for by him. We are of the opinion that the provisions of this act are broad enough to cover claims of this character.

A very earnest argument is made to sustain the theory that the suit brought in this case, if brought at all, should have been by the district attorney-general, and not by the revenue agent of the State. The contention is that it is a constitutional duty devolving upon the district attorney-general to bring all the suits to hold financial officers responsible for the handling of public revenue; and that this is a duty and function which he cannot delegate himself, nor can it be taken from him by the legislature; and that in any event, the district attorney-general is a necessary party to all such suits. It is also said that it is contrary to our system of government and

the general statutes of the State that State revenue agents shall be permitted to interfere in the settlement of county claims and with the acts of the county judge as the financial agent of the county.

It is true that the office of district attorney is a constitutional office; but his duties are fixed and enumerated by the statutes.

While it has been the duty of district attorneys and is still their duty to look after State and county revenue and the accounts of public financial officers, it is one which has been to a large extent neglected on account of other business pressing upon the time and attention of the district attorney-general. The result was that injury and loss was sustained by the State and county from the inability or failure of the district attorneys-general to look after and properly to bring to settlement the various officers clothed with the duty of collecting and disbursing State and county revenue. It was to remedy this state of affairs, and to make more prompt and certain the collection of the public revenues and the settlement of public officials that the act under consideration was passed providing for revenue agents whose sole duty it should be to look after such matters. And we have occasion to know that large amounts of revenue have been saved to the State and county under the operations of this act and by the efforts of these agents.

It is said in the case of *The State* v. *Spurgeon,* 15 Pickle, 664, that the district attorneys were by the

State, for use, v. Kelly.

operation of this act made the mere assistants of the revenue agents selected by the comptroller in such suits as they might institute under the provisions of the act authorizing their appointment.

We can see no valid constitutional objection to the act of 1901 under consideration, and to the acts of· which it is an amendment, and the act is broad enough in its provisions to authorize the bringing of suits like the present one to settle the accounts and go over all the transactions of the financial agents of the State and county in the collection, management, and disbursement of public revenues.

We do not intend hereby to adjudge that the defendant or his sureties are liable for any amount on the items charged against them; but only to say that in the present suit he may be brought to an account and settlement as manager and custodian of the public finances and funds.

We see no error in the decree of the court of chancery appeals, and it is affirmed.