STATE *v.* RIDLEY *et al.**

(*Nashville.* December Term, 1904.)

1. **COUNTY TRUSTEE.** Not insurer of public funds. Liable for lack of diligence, prudence and caution.

A county trustee is not an insurer of the safety of public funds, but if, in selecting a depository, he acts without proper diligence, caution, prudence and good faith, and the fund is lost in consequence, he, and the surety on his official bond are liable therefor.

Case cited and approved: State, for use, etc., v. Copeland, 96 Tenn., 296.

2. **SAME.** Same. Same. Case in judgment.

A county trustee deposited public funds in a new bank with an authorized capital stock of $25,000, of which only $1,100 was paid in, and not more than $5,000 subscribed. It was a matter of common information that the bank selected was of questionable standing, and the trustee was warned by his friends that it was unsafe, and that the public funds should not be put into it. In making the deposit the trustee secured to himself a personal benefit in that the bank paid the premium to the Guaranty Co. for making his bond, and paid one-half the salary of his deputy. The trustee could, and doubtless did, know the facts, but relied upon what he deemed the honesty of the management. There were other banks of ample solvency and reputable standing in the community in which he could have safely kept the money.

*Held,* that the estate of the trustee, and the surety on his bond, are liable for the public funds thus deposited by him that were lost by the failure of the bank.

---

*As to liability on official bond for loss of money by failure of bank, see note to Wilson v. People (Colo.), 22 L. R. A., 449.

State v. Ridley.

3. **SAME. Not released by adoption of report of successor show-
ing sum due from failed bank.**

A report made to the county court by the successor of a deceas-
ed trustee, the object of which was to show what funds came
to his hands as such successor, and which was spread on the
minutes of the court by a decree reciting that it was "read,
approved and adopted," does not operate as a settlement with,
and a release of, the estate of the deceased trustee for sums
shown by said report to be due from an insolvent bank in which
the deceased trustee had deposited public funds.

4. **STATE REVENUE AGENT. May maintain suit in name of
State for use of county against trustee and his surety for
county funds.**

A state revenue agent may properly bring suit in the name of
the State, for the use of the county, to recover of the county
trustee, and the surety on his bond, county funds improperly
deposited by such trustee in an insolvent bank.

Case cited and approved: State, for use. etc., v. Kelly, 111 Tenn.,
583.

5. **SAME. Fees should be fixed by court at reasonable amount.**
The statute authorizing state revenue agents to prosecute suits
to recover revenue due the State and counties does not arbit-
rarily fix the amount of the fees of the revenue agent and his
attorneys, and such fees should be determined by the court at
a reasonable amount.

6. **TRUSTEE'S COMMISSIONS. May be applied to reduce lia-
bility of deceased trustee for county funds.**

Where a trustee is held liable for county funds deposited by him
in an insolvent bank, it is proper to apply commissions earned
by the trustee between the time of the failure of the bank and
his death to reduce the amount of the liability of his estate
and his surety.

State v. Ridley.

FROM WILLIAMSON.

Appeal from the Chancery Court of Williamson County.—JOHN ALLISON, Chancellor.

HENDERSON & BERRY and THOS. B. JOHNSON, for Williamson County.

R. N. RICHARDSON, for estate of W. T. Ridley.

BOYD & McNEILLY and JOHN J. VERTREES, for Fidelity & Guaranty Co.

MR. JUSTICE WILKES delivered the opinion of the Court.

This is a bill to hold W. T. Ridley, trustee of Williamson county, and the United States Fidelity & Guaranty Company, his surety, liable for county funds deposited in an insolvent bank by the trustee, and thus lost to the county.

The chancellor, after a large mass of proof had been taken, held the estate of Ridley and the company, as his surety, liable for the funds, and for reasonable fees to the state revenue agent, who brought the suit, and his attorneys, and declined to find liability for a penalty of one per cent. per day, asked for in the bill.

Upon a reference to the master, he reported that the

State v. Ridley.

amount for which Ridley and his surety were liable was $13,305.91, and that the allowance to the revenue agent and his attorneys should be seven and one-half per cent. each on the amount recovered, and for these amounts judgment was rendered, from which both parties appealed.

The court of chancery appeals affirmed the decree of the chancellor, and gave judgment for $13,658.51 for the benefit of the county, and $1,024.38 for the revenue agent, for use of the State, and a like sum of $1,024.38 as fees for his attorneys, and against defendants, for all the costs of the appeal, and the cause was directed to be remanded to be further proceeded with.

From this decree both parties have appealed to this court, and have assigned errors.

The court of chancery appeals properly held that the liability of the defendants should be measured by the rules announced in *State, use, etc.,* v. *Copeland,* 96 Tenn., 296, 327, 34 S. W., 427, 31 L. R. A., 844, 54 Am. St., 840, when applied to the facts of this case; in substance, that the trustee was not an insurer of the safety of the public funds, but was liable if he acted without proper diligence, caution, prudence, and good faith, and the fund was lost in consequence, and that such diligence, caution, and prudence must be exercised in selecting a depository for the public funds.

That court reports that it was matter of common information that the bank selected was of questionable standing, and that the trustee was warned by his friends

that it was unsafe, and that public funds should not be put into it; to which he replied that it was nobody's business, as he had made a good bond; that in making the deposit he secured to himself personal benefit, in that the bank paid the premium due from him to the guaranty company for making his bond, and one-half the salary of his deputy; that the capital stock of the bank was authorized to be $25,000, but only $1,100 was ever paid in, and not more than $5,000 was ever subscribed. It was a new bank; started in business about the time Ridley was elected trustee, and he could, and doubtless did, know the facts, but relied upon what he deemed the honesty of the management. There were other banks, of ample solvency and reputable standing, in Franklin, in which he could have safely kept the money.

That court, summarizing, says: Mr. Ridley's administrator and security could not rely upon the fact that Ridley was honest, and, in his confiding nature, believed the bank to be safe, as it was not so considered by well-informed men in business circles in the community; and this he knew, or could have known in the exercise of that diligence, caution, and prudence required by law.

We think the court of chancery appeals and chancellor were eminently correct in holding Ridley's estate and his surety liable under the facts found by them.

It is said, however, that after the failure the county court settled with the trustee or his successor, and released him from all liability.

This defense was not set up in the pleadings.

The fact of the alleged release and settlement came into the record in this way:

After Ridley's death his deputy was appointed his successor by the county court, and submitted a report to the court, whose object was, as found by the court of chancery appeals, to show what funds came to his hands as such successor.

It does not appear that Ridley's administrator, or any one representing his estate, was a party to this report, or had anything to do with it.

In this report, Robinson, the successor, charged up Ridley with proper amounts, and gave him credit for warrants paid for uncollected taxes, for commissions, and for amount due from the Citizens' Bank & Trust Company, and for the cash turned over to him; and this report was spread upon the minutes of the court, with its approval, October term, 1902. The decree spreading it on the minutes recites that it was "read, approved, and adopted."

McFarland, an expert, exhibited a copy of this report to his deposition, which was taken afterwards, and in this way it was embraced in the record; but it was never set up or relied on as a release in any pleading, but the defense was that Ridley kept his books correctly, made regular settlements and reports, which were approved, and that the county authorities knew where he kept the funds, and the auditing committee approved his accounts, that he was elected a second term to his office,

and under his administration the value of warrants on the county was brought up to par, and that this estopped the county to maintain this suit.

Without passing upon other matters of contention in regard to this paper or report, we quite agree with the court of chancery appeals that it was never intended as a settlement with Ridley or a release of his estate from liability, but it was simply a statement to show what amounts went into the hands of Robinson, his successor.

Very soon after it was filed and received, and approved by the court, it approved the action of the county judge in joining in this suit with the revenue agent; and it is very evident that no one then, or while the suit was pending below, imagined that this was a settlement and release.

After this report was made, the commissions due to Ridley were claimed by the county to go on his indebtedness. They were also claimed by Ridley's administrator and by agreement were paid into this case, and decreed by the chancellor to the credit of the county. No claim was then made that there had been a settlement with and release of Ridley.

We think the finding of the court of chancery appeals on this feature of the case is entirely correct both as to the purpose and effect of this report.

We think the court of chancery appeals properly disposed of the exceptions to the evidence offered, and it is not necessary to go into detail on this feature of the case.

The suit was properly brought by the state revenue

State v. Ridley.

agent, and joined in by the county.  *State, use, etc.,* v. *Kelly,* 111 Tenn., 583, 82 S. W., 311.

We are entirely content with the fees allowed the revenue agent, and also those allowed his attorneys.  The statute does not arbitrarily command the amount of the fee, and it should be fixed at a reasonable amount.

We think, also, the commissions earned between the failure of the bank and the death of Ridley were properly applied to reduce the amount of Ridley's liability in his favor and in favor of his surety.

Upon the whole case, we see no error in the decree of the court of chancery appeals, and it is affirmed.