Argued March 12, affirmed April 15, 1924.

## I. N. FLEISCHNER ET AL. *v.* CHAUNCEY FLOREY AND THE NATIONAL SURETY CO.

(224 Pac. 831.)

**Officers—No Difference in Liability Because Required to Give "Undertaking" Instead of "Bond."**

1. That the instrument which a county clerk, or other officer, is required to give in order to qualify is styled by the statutes (Sections 348, 349, 3377, 3378, Or. L.), an official undertaking rather than official bond does not affect the question of strict accountability, but only the form; and "undertaking," unlike a "bond," not being required to be signed by the principal.

**Counties—Liability on Clerk's Official Undertaking Strict, Though Loss was from Failure of Bank, and He was not Negligent.**

2. Under a county clerk's official undertaking, conditioned as required by Section 3378, Or. L., to "faithfully pay over, according to law, all moneys that may come into his hands by virtue of such

---

Liability of public officer for loss of funds by failure of bank in which they are deposited, see notes in 17 Ann. Cas. 929; Ann. Cas. 1914C, 492, 36 L. R. A. (N. S.) 285.

office," he is liable for money collected by him for fishing and hunting licenses, which, by Sections 2326, 2330 (as re-enacted by Laws 1921, p. 286, Sections 47, 48), he is required to forward to the state treasurer the last day of each month, though it was lost by failure of a bank, without negligence on his part, and the county furnished no safe or suitable place for keeping money; the rule of strict liability obtaining.

From Jackson: F. M. CALKINS, Judge.

Department 2.

Plaintiffs bring this action to recover $718.26 alleged to have been collected by defendant Florey as county clerk of Jackson County, on sale of hunting and fishing licenses. Defendants filed their answer alleging that for the protection of these moneys he deposited them in the bank of Jacksonville, a state bank, and that while said moneys were in his lawful custody and were so deposited in said bank, the same were lost by reason of the failure of the bank. Defendants further allege that the county clerk was without fault or neglect in the premises, and that the county furnished the defendant Florey no safe or suitable place for the keeping of moneys in his hands as county clerk; and it was necessary to deposit the same in the bank, which was then solvent and of good repute, to avoid the danger of losing such funds; that in so doing he acted in good faith and with the knowledge and consent of plaintiff.

To this answer plaintiffs filed a demurrer on the grounds that same did not state facts sufficient to constitute a defense. The demurrer was sustained. Defendants refused to plead further and judgment was rendered against them, from which they prosecute this appeal. The defendant National Surety Company is surety on defendant Florey's official undertaking.        AFFIRMED.

For appellants there was a brief and oral argument by *Mr. Porter J. Neff.*

For respondents there was a brief and oral argument by *Mr. G. M. Roberts.*

BEAN, J.—1, 2. It is urged on behalf of defendants that the county clerk holds public moneys coming into his hands as bailee and is not liable for their loss in the absence of negligence or fraud on his part. This is claimed particularly for the reason that the statute of this state does not prescribe an official bond for the county clerk but an undertaking.

By virtue of the statute of the state and the official undertaking of defendant Florey as county clerk, he and his surety undertook to "faithfully pay over, according to law, all moneys that may come into his hands by virtue of such office." Sections 348, 349, 3377, 3778, Or. L. Section 2326 and 2330, Or. L., as reenacted by Chapter 153, Gen. Laws of Or. 1921, page 286, require that all moneys collected by the county clerk for anglers and hunting licenses, less 5 per centum thereof, shall on the last day of every month be forwarded to the state treasurer for the credit of the Game Protection Fund account. The latter section makes a failure to turn over all moneys received from the sale of such licenses a misdemeanor and provides a penalty therefor. The instrument filed by the defendant Florey, in order to qualify as county clerk, is styled by the Code as an undertaking; nevertheless, there is practically no essential difference in the purpose and effect of such an undertaking from that of a bond, and the liability thereon is the same as if the statute styled the instrument a bond instead of an

undertaking.  9 C. J., page 8, Section 2, which reads in part:

"The chief distinction between a bond and an undertaking is that the principal must be a party to a bond but need not be a party to an undertaking; in other respects the terms 'bond' and 'undertaking' may be regarded as having the same meaning and may be used interchangeably."

It is stated in 39 Cyc., page 679, that "while an undertaking differs in form from a bond, its essential purpose and effect are the same as those of a bond, and, indeed, it often operates under a statutory provision to that effect."   See *Howe* v. *Taylor,* 6 Or. 284; *Baker County* v. *Huntington,* 47 Or. 328 (83 Pac. 532); 48 Or. 593 (81 Pac. 144, 87 Pac. 1036); *City of Seaside* v. *Oregon Surety & Cas. Co.,* 87 Or. 624, 632 (171 Pac. 396).   Under the sections of the statute referred to, the legislature intended to make the county clerk, as well as the surety upon his official undertaking, liable for the money involved in this case, under the facts alleged in the pleadings.   The various statutory provisions relating to the matter are as effective as though they are written into the undertaking of the county clerk.   That undertaking required him to pay over to the state treasurer these moneys which he received for the sale of such licenses.

The liability of a county clerk is fixed by law.   The main office of his official undertaking is to add the security of the surety or bondman to that of the principal.   The rule is stated in 22 R. C. L., page 226, Section 5, as follows:

"The liability of a collector or receiver of public moneys is in the majority of jurisdictions that of an insurer.   He is answerable in all events.   The theory on which the doctrine is based is that a public officer having public moneys in charge is a debtor bound

to account and pay over the exact sums received. His liability is not regulated by the law of bailment. The basis of this rule is public policy. The safety of public funds demands the strictest responsibility of these having them in their control. A less strict responsibility is deemed likely to open the door for the perpetration of fraud in numberless ways impossible of detection, thereby placing in jeopardy the enormous sums of the public moneys constantly passing through the hands of public officers.''

In *United States* v. *Prescott,* 3 How. 578, 587 (11 L. Ed. 534, 738, see, also, Rose's U. S. Notes), the Supreme Court of the United States used the following language:

''This action was brought in the circuit court for the district of Illinois, on a bond given by Prescott, with the other defendants as his sureties, for his faithful performance of the duties of receiver of public moneys, at Chicago, in the State of Illinois. The defense pleaded was, that the sum not paid over by the defendant Prescott, and for which action was brought, had been feloniously stolen, taken, and carried away from his possession, by some person or persons unknown to him, and without any fault or negligence on his part; and he avers that he used ordinary care and diligence in keeping said money, and preventing it from being stolen. * *

''This is not a case of bailment, and consequently the law of bailment does not apply to it. The liability of the defendant, Prescott, arises out of his official bond, and principles which are founded upon public policy. * *

''The obligation to keep safely the public money is absolute, without any condition, express or implied; and nothing but the payment of it, when required, can discharge the bond.''

See *Boyden* v. *United States,* 80 U. S. 17 (20 L. Ed. 527, see, also, Rose's U. S. Notes); *United States* v. *Morgan,* 52 U. S. 154 (13 L. Ed. 643); *Bevans* v.

*United States,* 13 Wall. 56 (20 L. Ed. 531); *United States* v. *Keehler,* 76 U. S. 83 (19 L. Ed. 574); *Cameron* v. *Hicks,* 65 W. Va. 484 (64 S. E. 832, 17 Ann. Cas. 926); *Pine Island Board of Ed.* v. *Jewell,* 44 Minn. 427 (20 Am. St. Rep. 586, 46 N. W. 914); *Fairchild* v. *Hedges, Treasurer of Pierce Co.,* 14 Wash. 117 (44 Pac. 125, 31 L. R. A. 851). In the last-named case appellant was for four years prior to January, 1895, the qualified and acting treasurer of Pierce County. He instituted a proceeding to compel his successor to accept in settlement of appellant's account as treasurer, certain receiver's certificates. of insolvent banks, in which he had deposited sums of money coming into his hands as such treasurer during his terms of office. The petition asserted that the deposits were made with the knowledge of the respondents and in accordance with his business custom.

There was no charge of neglect or want of care against. the treasurer and it was admitted that the county had not provided a suitable and safe place in which to deposit the amount of money which might come into the treasurer's hands. The court held "that by the great weight of authority upon the question an officer, such as a county treasurer, under our law is held to the rule of strict accountability."

The county clerk well knew on assuming his position the hazards to which he would be exposed, and voluntarily assumed the risks of loss, except by the act of God or the public enemy. The law imposes upon him the duty to account for all public funds which come into his hands. That the deposit was made by the defendant county clerk with the knowledge or consent of plaintiffs, and that he believed that it was safe to make such deposit, would not relieve

him from strict accountability. To hold otherwise would be to ignore the provisions of the statute and the official undertaking of the defendant Florey: *Thompson* v. *Township,* 30 Ill. 99.

The deposit of the funds in question was made voluntarily for the convenience of the county clerk. Such deposit was not required or authorized by law. It was one of the duties of the county clerk to receive such funds and pay them over according to the statute. Of this he was aware when he accepted the office and qualified therefor. To hold him liable is but to carry out the conditions of his official undertaking: *County of Mecklenburg* v. *Beales,* 111 Va. 691 (69 S. E. 1032, 36 L. R. A. (N. S.) 285 and note); *Rankin* v. *United States Fid. & Guar. Co.,* 86 Ohio St. 267 (99 N. E. 314); note to *Wilson* v. *People,* 22 L. R. A. 450; collated authorities set out in 36 L. R. A. (N. S.) 285; *Tillinghast* v. *Merrill,* 151 N. Y. 135 (45 N. E. 375, 56 Am. St. Rep. 612, 34 L. R. A. 678).

Not only our statute but public policy demands that such public official should be responsible for all public moneys received by him irrespective of whether or not he is negligent. The rule of strict accountability is the only rule which will safeguard the welfare of the public. Any derogation of such rule would not be safe. There is some conflict of authority upon the question. We think the overwhelming weight of authority as well as the better reason support the rule herein announced. The judgment of the trial court is affirmed.                                          AFFIRMED.

MCBRIDE, C. J., and BROWN and McCOURT, JJ., concur.