STATE OF TENNESSEE AND SHELBY COUNTY *v.* JOHN C.
McLEMORE.

*(Nashville,* December Term, 1930.)

Opinion filed February 7, 1931.

130

L. D. BEJACH, for Shelby County.

BEN W. KOHN, for State and State Highway Department, appellee.

T. K. RIDDICK, J. N. THOMASON and KENNETH MC-KELLAR, for defendant, appellant.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

The principal question presented in this case is the liability of John C. McLemore, a former clerk of the County Court of Shelby County, for interest collected by him from a bank on deposits of state and county funds during his said term of office. Under an arrangement with the bank, this official was allowed interest on daily balances, amounting during his term to some $13,000. He holds this sum intact in bank awaiting the judgment of the court.

There was a decree in favor of the state for interest collected by the clerk on state funds and a decree in favor of the county for interest collected on county funds, together with a decree for $750, which was the amount of premiums that the clerk paid for a surety company bond guaranteeing the payment of his deposits in the bank. From this decree in its entirety, the former clerk has appealed. From the decree, insofar as it adjudged any of the recovery to the state, the county has appealed.

It seems to us there can be no doubt of the liability of this former official for the interest that he collected on these state and county funds. It appears from his own deposition that the funds upon which interest was allowed him by the bank were funds of the state and county.

In *State, for use, etc.,* v. *Copeland,* 96 Tenn., 296, with respect to the custody of such funds in the hands of such an official, it was said: "He is a trustee, charged by statute with certain duties and responsibilities, but having no right to use the funds for his own purpose or to make them his own." This is approved in *State* v. *Ridley,* 114 Tenn., 508, *Fentress County* v. *Reed,* 116 Tenn., 110, and the same conclusion reached in *Marion Trust & Banking Co.* v. *Roberson,* 151 Tenn., 108. It is shown in the latter case upon a review of the authorities that when a trustee places trust funds to his individual credit in bank, he is guilty of conversion, and is always held liable to the *cestui que trust* for any interest collected.

There is some conflict of authority in the different states as to whether an officer, having the custody of public funds, absolutely insures the forthcoming of such funds and becomes a debtor for the same, or whether

he is a bailee or trustee of such funds, merely chargeable with requisite care in their protection. The latter rule prevails in Tennessee, as has been seen, and where such rule does prevail, we think there is no decision permitting any officer to retain for his own benefit interest derived from a deposit or loan by him of public funds. In some states, where the liability of the official for the production of public funds is absolute, such funds, until the time for accounting, appear to be held in a sense his property, and he is permitted to retain interest collected by him on the same. Even in jurisdictions where the liability of the officer is unconditional, however, his right to retain interest collected on public funds is denied by many well considered cases. Particularly is this true where a statute forbids the lending of public funds. The cases are too numerous to permit a review. We cite a few of the leading decisions. In the annotated publications, the others are collected. *United States* v. *Mosley*, 133 U. S., 273, 33 L. Ed., 625; *Rhea* v. *Brewster*, 130 Ia., 729, 8 Anno. Cas., 389; *Adams* v. *Williams*, 97 Miss. 113, Anno. Cas., 1912c, 1129, 30 L. R. A. (N. S.), 855; *State* v. *McFetridge*, 84 Wis., 473, 20 L. R. A., 223; *Lake County* v. *Westerfield*, 273 Ill., 124, Anno. Cas., 1918e, 102; *State* v. *Schamber*, 39 S. D., 492, L. R. A., 1918b, 803; *Board of Arapahoe County* v. *Hall* (Colo.), 49 Pac., 370; *People* v. *Walsen*, 17 Colo., 170, 15 L. R. A., 456; *Maloy* v. *Bernalillo County*, 10 N. M., 638, 52 L. R. A., 126.

Section 6593, et seq., Thompson's-Shannon's Code, make it a felony for state or county officials to use, either directly or indirectly, money of the state or county or to receive or agree to receive interest from any bank for the deposit or use of such money. It is argued on behalf of the defendant that inasmuch as the transaction here un-

der consideration was forbidden by law that neither the state nor the county can have any relief on account of same but will be repelled when they come into court to assert rights so based. *"Ex dolo malo non oritur actio"* is invoked. Such a rule as this could not be applied to the beneficiaries of a trust seeking to hold the trustee as for a conversion of the trust fund. The state and county were not parties to the illegal transaction herein, nor do they come into court with unclean hands. Something is said about a custom having prevailed over the state on the part of various officials of depositing at interest public funds. There is no proof, however, of such custom, nor could the custom be effective in the face of the prohibition of such transactions contained in the sections of the code just above referred to.

The County of Shelby insists that it is entitled to all of this interest collected by defendant by reason of the provisions of the anti-fee bill, chapter 101 of the Acts of 1921. This statute provides in section 6 "that all the excess fees, commissions, perquisites and emoluments, no matter whether such sums arise from fees, commissions, perquisites or emoluments by order or by direction of Court, that are now or may be hereafter directly or indirectly collected by virtue of their offices by the . . . Clerks of the County and Probate Courts . . . are hereby declared to be the property of the respective counties wherein the same are collectible, except as herein provided."

The argument is that the interest herein collected by the defendant was an excess fee, commission, perquisite or emolument and passed to the county accordingly.

The chancellor was of opinion that such interest so collected by the defendant was an increment of the par-

ticular fund upon which it accrued, and that such interest became the property of the state and of the county in the proportion that the state and county owned the fund upon which the interest accumulated. We think this conclusion of the chancellor was correct.

Without entering into a discussion of the meaning and scope of the words "excess fees, commissions, perquisites and emoluments," it was not, in our opinion, the intention of the legislature by section 6 of chapter 101 of the Acts of 1921 to appropriate to the several counties of the state interest collected by the county officials upon state funds. It was not within the contemplation of the legislature that any such returns would come into the hands of the county officials, since lending of public funds was positively prohibited by the statute mentioned.

Moreover, section 1 of chapter 101 of the Acts of 1921 provides that the various *county officers* shall be deprived of their fees, commissions, etc. The purpose of the legislation was to turn over to the counties something that otherwise would have gone to the officers—to deprive the officers of the excess fees. It was not designed by this Act to take anything from the state and make it the property of the several counties. Interest unlawfully collected by the county official on state funds might have been recovered by the state prior to the passage of the Act of 1921 and we are satisfied this right on the part of the state was not touched by that Act.

The defendant herein has been held liable, as stated above, for $750 paid by him as the premiums on indemnity bonds obtained to protect his deposit in bank. This recovery was decreed on the ground that there was no statute authorizing or requiring the taking of such

bond and that accordingly the expense was not one with which the defendant might be credited.

The arrangement between the defendant and his bank by which the latter was to pay him interest, on daily balances was irregular and illegal, as we have seen. As it turns out, the state and county have nevertheless profited. We assume, as a matter of course, that the bank would not have allowed defendant so much interest, if the bank itself had undertaken to pay the premiums on the surety bond. While the defendant's contract with the bank was censurable, inasmuch as it was made, it was the part of prudence to take the bond. This suit was brought in a court of equity and, since the state and county are obtaining the fruits of the defendant's deal with the bank, it seems to us that defendant should be allowed to deduct this expense incident to the transaction.

With the allowance last indicated, the decree of the chancellor will be otherwise affirmed.

The chancellor sufficiently distinguished the decisions of the Supreme Court of the United States relied on by the defendant.