(No. 6401.   April 23, 1937.)

BONNEVILLE COUNTY, Appellant, v. STANDARD ACCI-
DENT   INSURANCE   COMPANY   OF   DETROIT,
MICHIGAN, a Corporation, and H. L. HANSEN, as
County Assessor of Bonneville County, Idaho, Respond-
ents.

[67 Pac. (2d) 904.]

Henry S. Martin, for Appellant.

Otto E. McCutcheon, for Respondents.

MORGAN, C. J.—This action was commenced to recover $831.40 collected by respondent Hansen and not paid into the county treasury, as required by law. The facts necessary to an understanding of the question of law presented are that Hansen was assessor of Bonneville County and it was his official duty to collect and pay over to the county treasurer moneys due for personal property taxes and motor vehicle licenses; that Saturday, June 3, 1933, he collected, in cash, and, at the time his office was closed on that day, had in his possession, money arising from such taxes and licenses amounting to $831.40; that this money was placed in a cabinet in the vault in his office and the vault was locked; that on Sunday morning, June 4, 1933, two county prisoners,

who were trusties, were employed in the courthouse, as was the custom, to do the janitor work in the county offices, including that of the assessor; that one of the prisoners, so employed, entered the vault and stole the money and it was never recovered. Demand was made on behalf of the county, on the assessor and the surety on his official bond, for payment of the shortage resulting from the loss of the money, and payment was refused. This action was commenced to recover it. The cause was tried to a jury and spec'al interrogatories were propounded to it, in answer to w  .h the jury found neither the assessor nor his deputy wa;, negligent in safekeeping the money. The jury rendered a ge.eral verdict in favor of the county for $831.40, together with interest thereon at the rate of 6 per cent per annum. 'n motion of defendants the general verdict was set aside and judgment of dismissal was entered. This appeal is from the judgment.

The question of law presented is as to whether Hansen and Standard Accident Insurance Company, the surety on his official bond, are liable to the county for the loss of money belonging to it, which was stolen from him without his fault. On this question the courts are divided.

Apparently the trial judge adopted the theory that an officer charged with the safekeeping of public funds is liable for the loss of them only in case it is due to his failure to exercise that degree of care in their safekeeping which was exacted of a bailee for hire by the common law; that because Hansen was free from negligence in the discharge of his trust he was free from liability. Respondents have cited the following cases in support of that rule: *City of Healdsburg v. Mulligan*, 113 Cal. 205, 45 Pac. 337; *Cumberland County v. Pennell*, 69 Me. 357, 31 Am. Rep. 284; *York County v. Watson*, 15 S. C. 1, 40 Am. Rep. 675; *State v. Copeland*, 96 Tenn. 296, 34 S. W. 427, 54 Am. St. 840, 31 L. R. A. 844; *State v. Ridley*, 114 Tenn. 508, 85 S. W. 891; *State v. Gramm*, 7 Wyo. 329, 52 Pac. 533, 40 L. R. A. 690.

The weight of authority in this country, as will be seen by an examination of the following cases, and those therein cited, oppose the view that an officer, charged with the care of public funds, is free from liability for their loss if he is free from negligence causing or contributing to it, and hold

to the doctrine of strict accountability, which requires such an official and his surety to make good the loss of public money entrusted to him, in his official capacity, regardless of his freedom from negligence. (*Smythe v. United States*, 188 U. S. 156, 23 Sup. Ct. 279, 47 L. ed. 425; *Bush v. Johnson County*, 48 Neb. 1, 66 N. W. 1023, 58 Am. St. 673, 32 L. R. A. 223; *Fleischner v. Florey*, 111 Or. 35, 224 Pac. 831; *Fairchild v. Hedges*, 14 Wash. 117, 44 Pac. 125, 31 L. R. A. 851; *Tillinghast v. Merrill*, 151 N. Y. 135, 45 N. E. 375, 56 Am. St. 612, 34 L. R. A. 678; *De Rockbraine School Dist. No. 1 of Corson County v. Northern Casualty Co.*, 36 S. D. 392, 155 N. W. 10; *Wiley v. City of Sparta*, 154 Ga. 1, 114 S. E. 45, 25 A. L. R. 1342; *Sanders v. Board of Commrs. of Delaware County*, 160 Okl. 52, 15 Pac. (2d) 818; *Toole County v. De La Mare*, (Utah) 39 Pac. (2d) 1051; *Patterson v. People*, 98 Colo. 86, 53 Pac. (2d) 1187.)

What seems to us to be a correct statement of the rule applicable to cases of this kind, in the absence of constitutional or statutory enactment on the subject, is stated by the Supreme Court of Colorado in *Wilson v. People*, 19 Colo. 199, 34 Pac. 944, 41 Am. St. 243, 22 L. R. A. 449, as follows:

''We believe the true rule is that a public officer who receives money by virtue of his office is a bailee, and that the extent of his obligation is that imposed by law. That, when unaffected by constitutional or legislative provisions, his duty and liability is measured by the law of bailment. If a more stringent obligation is desired, it must be prescribed by statute.''

That a more stringent obligation is desired in Idaho is made clear by article 18, section 6 of our constitution, which contains this provision:

''The legislature shall provide for the strict accountability of county, township, precinct and municipal officers for all fees which may be collected by them, and for all public and municipal moneys which may be paid to them, or officially come into their posesssion.''

That is a solemn declaration of the public policy of the state with respect to the liability of the holders of offices therein named, including county assessors, for public moneys which come into their possession. It is also an admonition to

the legislature to provide for carrying that public policy into effect. That the legislature has heeded and obeyed the admonition, with respect to the occupant of the office here under consideration, will be seen by an examination of the following sections of Idaho Code Annotated:

57–807. "The condition of an official bond must be that the principal will well, truly and faithfully perform all official duties then required of him by law, and also all such additional duties as may be imposed on him by any law of the state. . . . . "

61–1201. "Upon delivery to the assessor of the personal property assessment roll, as provided for in this act, or any subsequent roll, as in this act provided, all personal property taxes shown thereon shall be charged to such assessor and he and his bondsmen shall be liable for all taxes collected."

61–1801. "On the first Monday of each month the assessor must settle with the county auditor for all moneys collected on account of taxes levied on property entered upon the personal property assessment roll, and make a detailed statement, under oath, upon blanks in the form to be supplied by the state auditor showing the total amount of all receipts issued and the amount of money collected for state and county purposes, and for every city, village, school district, road district or other taxing district since his last settlement, and must pay all such moneys into the county treasury upon the certificate of the county auditor, to be apportioned as provided in this act."

61–2004. "The county auditor must affix his official seal to, and sign, all licenses, and from time to time deliver them to the tax collector in such quantity as may be required, taking his receipt therefor and charging him therewith, giving in the entry the numbers, classes and amounts thereof."

61–2010. "On the first Monday in each month the collector must return to the auditor all licenses unsold and be credited therewith, and must, with the auditor, appear at the treasurer's office and pay into the county treasury all moneys collected for licenses sold during the preceding month, take the treasurer's receipt therefor and file a duplicate thereof with the auditor. The auditor must credit the collector and charge the treasurer therewith. . . . . "

■ ■ The legislative intention is clear that the assessor shall be charged with all money coming into his possession in payment of personal property taxes, or for licenses, and that he shall be given credit therefor only if and when he actually pays it into the county treasury. The condition of the bond he gave was that required by statute and he was thereby obligated to well, truly and faithfully perform all official duties required of him by law. The obligation was not that he would pay over the money if he did not lose it without fault on his part. The duty imposed on him by law, the faithful performance of which was secured by his bond, was not performed by delivering to the treasurer that part of the public funds which he had collected and which had not been stolen from him.

■ Following the rule of strict accountability demanded by the constitution the legislature, as was its duty, provided no exemption from the obligation to faithfully account for *and pay over* all moneys collected, and the courts cannot, in the discharge of their duty, create an exception to the application of the law.

The judgment is reversed and the cause is remanded to the district court with direction to reinstate the general verdict and enter judgment thereon. Costs are awarded to appellant.

Ailshie, Budge and Givens, JJ., concur.

Holden, J., deeming himself to be disqualified, did not sit with the court at the hearing, nor participate in the decision.