RAY v. OLIPHANT.

Court En Banc. August 8, 1925.

Certiorari denied by Supreme Court October 10, 1925.

1. **Eminent domain. Questions involved in condemnation proceedings cannot be relitigated in subsequent proceedings involving other land taken.**
The purchaser of land subject to right-of-way condemned by county, who took assignment of his grantor's award of damages, cannot, in subsequent proceedings to enjoin county from paying award for additional property taken or damage done reopen questions settled by judgment of circuit court awarding county the particular land condemned before his purchase.

2. **Eminent domain. Evidence held to show that property in addition to that condemned was taken, involving substantial damage.**

In proceedings to enjoin county from paying landowner money in addition to that awarded by jury view for right-of-way, evidence held to sustain a finding that landowner had been substantially damaged by taking of additional property in excess of that for which award was made.

3. **Counties. Highways. County Court held authorized to settle with owner for land taken for highway in addition to that condemned.**

In view of Shannon's Code, section 1880a15, making sections 1844-1867 applicable to all counties in State so far as condemnation powers are concerned, a county which, after condemnation of right-of-way for road and award of damages by jury of view, in constructing road took additional land to the substantial damage of the owner the court is authorized to negotiate and purchase the additional land.

4. **Injunctions. Highways. Injunction will not lie to restrain payment of award for right-of-way.**

Where a county has fairly negotiated and bought a right-of-way injunction will not lie to restrain the payment of the award therefor.

5. **Equity. Chancellor on bill to enjoin payment of award in condemnation proceedings not deprived of jurisdiction to enforce award as involving unliquidated damages.**

Where bill for injunction was filed to restrain county from paying amount awarded in settlement of damages caused by taking land in addition to that condemned for road purposes, the chancery court was not deprived of jurisdiction to order payment of award on the ground, that it involved determination of unliquidated damages, but will retain jurisdiction to administer complete relief.

6. **Counties. Statute referring to appropriations does not apply to a case involving the payment of award of damage for property taken for right-of-way.**

In bill to enjoin county from paying amount awarded landowner for damages caused by taking land for road, in which landowner filed cross-bill to enforce payment, Shannon's Code, section 6016, relating to appropriations, held to have no application, since the award may be treated as an appropriation in payment of a recognized legal obligation.

Appeal from and Error to Chancery Court, McMinn County; Hon. T. L. Stewart, Chancellor.

Reversed and rendered.

Candler and Boyd, of Athens, for Geo. L. Ray.

E. B. Madison, of Athens, for Oliphant.

SNODGRASS, J. This was an original injunction bill, filed by George L. Ray, styling himself a citizen and taxpayer of McMinn county, against C. W. Oliphant, chairman of the county court of said county, and M. H. Langston, seeking to enjoin the said chairman from issuing his warrant in the sum of $180 to his co-defendant, Langston, in payment of an appropriation to the said Langston made by the county court in settlement of a right-of-way claim. An injunction was obtained and served upon the defendants, the one from paying, and the other from receiving, said warrant.

The answer of defendant M. H. Langston was filed as a cross-bill, seeking full damage for said alleged right-of-way, under an allegation that the county and its chairman and original complainant had colluded to avoid payment of said claim, and that complainant in the cross-bill was entitled to full damage; that the $180 appropriation was made by way of compromise, and, in any event, he should be allowed to recover that; and that defendant Oliphant should be required to hand over the warrant, etc.

The county and its chairman demurred to this cross-bill, which was overruled, except the second and third grounds were allowed to be relied upon at the hearing. Such grounds were:

"(2) That this court has no jurisdiction of the subject-matter set forth by the said answer filed as a cross-bill, because the chancery court has no jurisdiction of suits involving unliquidated damages.

"(3) That the said answer filed as a cross-bill sets up new matter, foreign to this suit, in seeking damages for the wrongful location of a highway upon cross-complainant's premises."

The defendant Oliphant filed a somewhat neutral answer, holding himself ready to comply with the orders of the court as to the issuing of the warrant. His answer, being short, and as eliminating the necessity of more lengthy reference hereafter, is stated in full as follows:

"Said defendant, for answer to so much of the bill as he is advised necessary and proper for him to answer, says:

"This defendant says that he is chairman of the county court of said county, and he stands ready and willing to perform and obey all the orders of this court, and he avers that he is ready and willing to issue a warrant to cross-complainant for the amount appropriated to him by the county court of McMinn county at its January, 1922, term, should this court order him to do so, and that the reason the said warrant was not issued to cross-complainant was that he was enjoined by this honorable court from so doing in this cause, and, as stated before, he stands ready and willing to perform and obey any order of this honorable court."

On the hearing the chancellor sustained the bill, perpetually enjoined the issuance or acceptance of the warrant, and dismissed the cross-bill, rendering judgment against the defendant M. H. Langston for all costs incident to the bill and answer, and against cross-complainant Langston and security on the cost bond for all the costs incident to the cross-bill.

The defendant to the original bill and cross-complainant in the answer, H. M. Langston, excepted to the whole decree, and prayed an appeal to the court of civil appeals, which was granted upon con-

dition that he execute a cost bond, and he was given thirty days to do so. The cause was brought to this court, but stricken from the docket because no bond had been filed as required by the order. Appellant Langston thereupon, and within the time allowed, filed the record and obtained writ of error, and has assigned errors, as follows:

"We insist the court erred:

"(1)  In decreeing that in making the appropriation aforesaid the county court was assuming to act as a jury of view.

"(2)  The court erred in enjoining the original defendant Oliphant from issuing the warrant for $180 and making said injunction perpetual, and in enjoining said Langston from receiving said warrant.

"(3)  The court erred in dismissing the cross-bill of defendant Langston and taxing him with the costs thereof, and the costs of the cause."

As in the end it will more perfectly illustrate the contentions, in this case, and shorten to some extent the finding, the pleadings in the statement of the case are here more fully stated.

The original bill charged that McMinn county condemned a certain right-of-way over land belonging to one T. H. Wright, in accordance with the statutes governing the taking of property for public improvement, the said right-of-way being condemned for the purpose of operating a public road, and a jury of view accordingly went upon the premises of said Wright, condemned the strip of land required for the right-of-way, and assessed the compensation to be allowed the said T. H. Wright.  That no appeal was taken from the finding of the jury of view, and judgment accordingly went down against McMinn county for $20, the compensation allowed by the jury of view in the circuit court of McMinn county at its April term, 1920.  That this cause was No. 2936, McMinn County v. T. H. Wright.  A certified copy of the judgment in said cause, the bill averred, is hereto attached and marked Exhibit A, but not for copy with the process.  That some time after the said judgment was rendered, as complainant is informed and believes, the said T. H. Wright sold the land through which McMinn county had secured the right-of-way to defendant M. H. Langston, and transferred to him the judgment against McMinn county.  That the deed to Langston had not yet been recorded, but that complainant is advised that defendant Langston, claiming under said Wright, has no right of action against McMinn county for damages against him by the taking of said right-of-way, as the matter had already been adjudicated in a court of competent jurisdiction, and that defendant Langston would be forever barred and estopped from asserting or attempting to assert any rights he may have had for an adequate

compensation allowed him by the circuit court of McMinn county in the above cause. That the defendant M. H. Langston filed a claim with the county court of McMinn county at its January term, 1921, for additional compensation on account of damages against him by the taking of said right-of-way, claiming that his property was damaged greatly in excess of the $20 which was allowed Wright, and the county court accordingly appropriated him the sum of $180 additional compensation. Complainant further charges that defendant Langston will make a demand upon defendant C. W. Oliphant, chairman of the county court, for a county warrant for the sum of $180 allowed him by said court, and that defendant Oliphant will issue him the said warrant, unless restrained from doing so by a fiat from this honorable court.

The bill further charged that the county court had no authority to make this appropriation, and, when it did so, it acted without authority of law; that, if this illegal appropriation is paid defendant Langston, it would set a bad precedent for the county court of McMinn county, for the reason that McMinn county has condemned rights-of-way over the lands of a great number of people, and, should this appropriation be permitted to be made, a great number of parties through whose lands rights-of-way have been condemned would file claims with the county court of the county, and the same would work a burden and a hardship upon the taxpayers, and the taxpayers would suffer irreparable injury if the county funds should be appropriated in this manner. The circuit court proceedings were filed as an exhibit to the bill, from which it appeared that in the proceeding instituted against T. H. Wright the jury of view had set apart land for a right-of-way which was specifically described as follows:

"A strip of land (50) feet in width over and across the land of the aforesaid for a public road as now located by the state of Tennessee, department of highways, through its engineers or agents.

"The said strip of land to be (25) feet in width, on each side of the center line as surveyed from station 20-18 to station 32 a distance of 182 feet containing 0.1 acres more or less, and to be used for the purpose of a public road in which the state or federal government has offered aid to the aforesaid county in its construction."

They fixed the value of the strip set apart as a right-of-way at $20.

This report was confirmed, and a judgment was rendered in favor of the said T. H. Wright and against McMinn county for the sum of $20.

Afterwards, and before the road was constructed upon this right-of-way, the said T. H. Wright transferred the remainder of the land

through which it was granted to defendant in the original bill, being the plaintiff in the cross-bill, also transferring to him the $20 which had been awarded to him, for which a warrant had been drawn and was in the hands of the chairman of the county court.

The answer of cross-complainant M. H. Langston to this bill sets up:

That it is true that McMinn county in its corporate public capacity entered certain proceedings in the circuit court at Athens looking to the taking over or condemning as a right-of-way for what was generally known as the "Concrete Highway" certain lands of various residents of said county, including the T. H. Wright named in the bill in this cause; that said condemnation cause was brought in the circuit court of said county, and its number on the docket was as stated in the bill No. 2936, as respondent is informed; that there was a jury of view who acted on this and a number of other cases the same day, being driven from place to place, and passing on a number of right-of-way questions on the same day and trip; that as to whether or not said jury was separately sworn in each case or proceeded under one oath for all the cases passed on in one day, as respondent is informed, he is unable to say, and requires strict proof as to the regularity of said proceedings and as to compliance with the law on the part of the said condemning jury and officials, but that certain it was that the jury who passed on the damage done to the lot in question in this cause and fixed the damages passed on said damages according to the delimitation of the encroachment of the cut to be made by the road on the lot as shown by the pegs or stakes then in the ground, placed there by the civil engineer in charge for the county for that purpose, but it was stated that, after said award, and after the apparent encroachment had been passed on, the engineer resurveyed the land, relocated his stakes, and created a new and larger cut and encroachment on said lot of land, semicircular in shape, or crescent shaped, the which newer and different location being for the alleged purpose of giving a larger and better curve to the road as it approached the underpass, where the highway crossed under the tracks of the Southern Railway Company's line of railroad, took a greater and larger portion of the said lot, and made a deep cut through the same, coming within a few feet of the residence porch on one end and of the barn on the other, and same was not passed on or assessed by the jury or otherwise, and that no notice was given or other proceedings had to give notice of said change of location other than the resetting of said stakes by said engineer or his servant, acting for and under McMinn county, upon whom devolved the burden of providing and paying for the rights-of-way for the location and erection of said public highway or concrete road. The answer

averred that it would be inequitable and unjust, dishonest and immoral for the owner of a piece of real estate, especially a town lot which received no such benefit from the road as the one in question as a farm along the route would receive, to be lulled into a sense of security by the placing of stakes along the supposed roadway to indicate the extent of the cut, and then, after the jury had passed on said supposed damage, for the county through its engineer or other servants to widen, increase and enlarge the said cut so as to take more of the owner's lot of land, damaged and cut him off from a front by a cut many feet in depth, destroy his mode of ingress and egress from and to his barn, and then make the technical question that no appeal had been prayed from the action of the jury based on the first survey and staking of the said right-of-way. To allow this would be to rob the owner of his property, confiscate the same by a trick, and deprive him of his land without just compensation, the which is not only unjust and inequitable, but, it was alleged, in violation of his rights under the Constitution both of the United States and the state of Tennessee.

It is further stated that it might be true that the said T. H. Wright, the former owner of the land, had sold it to this respondent after the jury had passed on the damage, as indicated by the first stakes mentioned, but it was denied that respondent bought it after the relocation of the said highway over said lot by which the increase in the amount of land had been taken; that he had no notice there was to be a foot more of said lot taken or said cut made for the road until after he had bought same from said Wright; that he made said purchase under the belief that said first named stakes limited the encroachment of said cut on said lot; that on the day before the forces of the county commenced to make said cut upon his lot respondent came to Athens, and, in his absence, said force removed his woodpile, reset the stakes, and began said relocation of said cut; that respondent was surprised, astonished, and outraged by said proceeding, and protested against same without any effect on those in charge of said work; that he had no notice of said change, was never cited into court or made party to any legal proceedings looking to the cutting away and destroying of so large an area of his lot; that from the time of said relocation of said cut and curve and the taking of this large proportion of respondent's property until now there has never been to his knowledge any notice issued, or amendment made, or other means taken, to apprise him of said additional appropriation of said property by the county, nor has he ever had his day in court or any chance to present his side of the case in said circuit court, but that the matter was carried through as against T. H. Wright, and as if the location of said cut had remained as originally designed, and as indicated by the county by said original line of stakes.

He avers in his answer that by reason of the relocation of said cut the roadway has been so built as to pass very close to the front of his house and to the front of his barn standing at opposite ends of his lot; that the said cut is claimed to be necessary to the county for the proper approach to said railway underpass, but that on the opposite side of the road from him and in front of the lot of one Prince there is a row of trees which would have been destroyed had the curve not been thrown on respondent, and he is informed that, although said Prince was allowed $300 damages, the court authorities declined to cut said trees, and preferred to change the route over on respondent's lot. He is informed that said conclusion was reached after respondent bought the lot, relying on the "surveyor's" stakes as set to show the amount of respondent's lot to be taken and used for said deep cut. Respondent shows that he has been damaged by the relocation of said cut fully $400; that, even if same was within the technical width of the right-of-way described in the condemnation of the lot as the property of said T. H. Wright, yet by the change in the construction of said cut, extending as it does practically across his entire front, and being many feet in depth, he is advised that the same constitutes a new taking and damaging of the land involved, and entitles him to additional and reasonable compensation for same.

And respondent further avers that, being advised that under the law regulating the construction of said highway that McMinn county was compelled to furnish the right-of-way, and being advised that he was not bound by the proceedings against said Wright and the verdict of $20 given him for said trial encroachment, he went before the county court of McMinn county at its January term, 1922, and asked for reasonable compensation for the damage done as above shown to his property; that the court promptly recognized the justness of the claim; that he should not be held to the damage awarded said Wright in the matter; that the extension of said cut over and through a large additional portion of said lot after respondent had bought same and after the infringement of said cut on the lot had been designated otherwise by said first line of stakes entitled him to damages, and said court voted respondent $200, that is, $180 in addition to the $20 awarded said T. H. Wright, deeming respondent entitled to this also; that the motion was made to allow respondent $300 as a compromise offer, and, as stated in open court, was done to avoid litigation, but, on being asked by members of the court to accept $200 as a further compromise, respondent agreed to make this concession to the court. Respondent agreed to this amount only on condition that it would be paid at once, and without suit or further trouble, and it is averred that he is advised that McMinn county, through the compromise proceed-

ing then and there made and voted upon by the county court, is bound thereby, and cannot withdraw therefrom; that said amount as allowed thereby was far below his real damage, as his property was worth $800 to $900, and has been reduced in value to where he would now be forced to sell it for $400, although he had put improvements thereon, and the same had advanced in value. One item that was averred as of serious damage is that by reason of this five or six foot cut in front of his barn he cannot go into and out of same at the usual place, and is compelled to reach it by going through the property of other persons, which could be closed on him at any time; and further that the crumbling and erosion of the steep banks of said cut would undermine both his barn and residence, as well as make the same inaccessible and difficult to reach, whereas formerly he had a convenient location both as to house and barn. He denies that he is bound by the award to Wright. He denies the right of complainant to attack the action of the court in making the appropriation as aforesaid; and then, having fully answered, and again insisting that the county court had the right to pay for and settle by vote of its members the damage done in the premises, he asks that his answer be filed as a cross-bill against McMinn county, and charges that the county, acting through its chairman, procured the complainant in the original bill to enjoin the payment of said sum to the cross-complainant or the issuance of a warrant for same, and that by collusion between complainant and defendant C. W. Oliphant, the county chairman, who, it was alleged, was bitterly opposed to improvements of public highways and other progressive measures in McMinn county, that the bill was filed in an attempt to prevent the payment of cross-complainant's claim as a matter of revenge or persecution rather than in the public interest, and more to prevent landowners from pressing their claims for compensation for rights-of-way than in the public service. He asks to have his answer filed as a cross-bill against C. W. Oliphant as chairman of the county court of McMinn county and against said county; that the injunction be dissolved; that defendant Oliphant, as chairman, be required to issue and deliver to cross-complainant said warrant for $180, and to deliver to him the warrant for $20, if issued for T. H. Wright, and that cross-complainant have judgment against McMinn county for said additional compensation up to the amount of $400 in all for the damage to his said property in the location of said right-of-way and incidental construction of said cut, or, in the alternative, as the allowance of said money was a compromise in the county court, that the cross-complainant be allowed the full amount of his damages, which he charges is $400, with all his proper cost, and, if mistaken in any of these his special prayers, that he have such other, further, and general relief as his case merits.

Thereupon the demurrer of McMinn county and Oliphant, its chairman, was filed, which was disposed of as hereinbefore stated.

It is proper also to state that the plaintiff in the original bill was allowed to amend his bill so as to allege that defendant M. H. Oliphant made his application for the $180 at the January term of the court for the purpose as stated in the original bill, and that the said application was not made first to the monthly court sitting last before the meeting of the quarterly court at which the appropriation was to be passed upon. This was allowed to be made of record.

McMinn county filed its answer to the cross-bill admitting that in the year 1920 cross-defendant was constructing certain highways within its boundaries, and particularly a certain highway leading from the Bradley county line running through the town of Calhoun toward Athens, and through other towns in said county; that this particular highway was laid out and surveyed by engineers of the state highway commission, and that the defendant had nothing whatever to do with the location of said highway; that it merely entered into a contract with the state highway department to furnish the rights-of-way for said highway; that it was therefore necessary that this cross-defendant (McMinn county) condemn a right-of-way over the property now owned by cross-complainant, and at that time owned by one T. H. Wright; that the right-of-way used by cross-defendant over said land was duly condemned, and cross-defendant denies that there was any more land used or taken from cross-defendant (meaning cross-complainant) or Wright than was condemned or passed upon by the jury of view, and averred that it complied with the law in all things in condemning this particular land. It sets up the proceedings in the circuit court, therefore, as a bar to any further claim of the cross-complainant, and denies every other allegation in the cross-bill.

Eliminating any question, therefore, that might or was attempted to be made as to the validity of the circuit court proceedings, and any attempt to reopen the questions settled by the final judgment of that court awarding to the county that particular portion of the land described in the report of the jury of view (as we think it was not open to appellant to relitigate any of those questions), whatever may have been the injustice effected thereby to the said Wright, Wright conveyed the remainder of the tract, or lot, rather, out of which the right-of-way taken out of him was carved to appellant, and that, too, before work was begun in actually constructing the road over that part of the lot that the county owned under the condemnation, and in doing so the proof is abundant that they enlarged the right-of-way more than the twenty-five feet on that side of the center line which had been surveyed, and took in land outside of the strip they had secured from Wright, and appropriated

an additional portion of the lot belonging to appellant. Their own engineer, who had made the survey, introduced by the county, testifying that there had been no change of the survey, and that the stakes set which served to mislead appellant into his strictures in the matter were not intended to indicate a side line, but a center line, which had indeed not been placed upon the actual center line for reasons of difficulty, but which contained marks noting the offset (this latter being unimportant now in the view we have taken of the case); did testify that the land actually appropriated was more than twenty-five feet from the center line established in the circuit court proceeding, being at one place twenty-six feet instead of twenty-five, and at another place twenty-nine feet instead of twenty-five, thus taking that much more off of the entire front, or practically so, of appellant's land, which had the effect also of deepening the perpendicular embankment next to his house and barn, cutting him off from access thereto, and threatening by erosion to undermine his barn and house.

The embankment ranges from eight feet in front of residence to from eight to twelve feet in front of barn, and is all along his front. One witness says that he would have to have an elevator to reach his property from the front, and it was also shown that to get to his barn with wagon he would have to pass over lands belonging to others. It was indicated that, with a tight squeeze, and running the risk of falling over the embankment, he might drive a team between the barn and the edge of the embankment, but it was doubtful.

The testimony was abundant that appellant had been damaged as much at least as $400. This testimony illustrates that, however the value might have been viewed as little under other conditions, it was a different matter when the question of a few feet might determine a front access to a town lot. In this condition the appellant applied to the January or quarterly term of the county court for redress, and effected the settlement in the way and manner described in his answer and cross-bill, and there is no intimation in the proof to the contrary. Indeed, the chairman confesses as much in his answer, and the proof so establishes.

Thereupon the plaintiff in the original bill, as a taxpayer, assumes the roll of fatherly guardianship, and files the bill above set out, with the destructive consequences detailed.

There is no sufficient evidence in the record to justify the charge that the county connived at the filing of the original bill. It does plead estoppel in its answer, however, but the chairman avers his willingness and readiness to draw his warrant if the court says so.

The plaintiff in the original bill attacked the settlement and appropriation upon the ground that the court was without jurisdiction to make such a settlement and appropriation. This seems to have been the opinion of the chancellor, for his decree he recites:

"This cause came on to be heard upon the pleadings and proof and argument of counsel, from all of which, it appearing to the court that the bill was filed in this cause by complainant to enjoin the payment of $180 to defendant M. H. Langston, appropriated to him by the county court of McMinn county at its January term, 1922, and it appearing to the court that the county courts of this state have only such powers and jurisdiction conferred them by statute, and in making said appropriation the county court assumes to act as a jury of view, and allowed defendant M. H. Langston the aforesaid sum for an additional amount of land that was alleged by him to have been taken in addition to the strip of land taken on a condemnation proceeding of this land that was formerly made, and it appearing to the court that the county court acted beyond their authority in making this appropriation, and there is no statute under which the same could be made."

"It is therefore ordered, adjudged, and decreed by the court that the original bill be sustained," etc.

It is believed that this was a mistaken view of the situation, and that the very law under which the county had theretofore been proceeding was a sufficient authority. It would seem to be axiomatic that, if the county had the right to determine upon a right-of-way and the power under condemnation proceedings to take private property against the will of the owner and devote it to public use, if the owner were willing to part with his property so needed for public use, the county would have the right to negotiate and purchase the right-of-way upon terms it thought to be advantageous. If this be true, then it follows that, if in advance of all proceedings or negotiations it had actually taken and appropriated private property to such use, it would be unnecessary to litigate the question of damages if the owner were content to amicably settle. It would indeed be a strained construction of the statute (Shannon's Code, section 1880a15), which provides "that sections 1844 to 1867, inclusive, are hereby amended so as to confer upon and extend to all counties in the state of Tennessee the benefit, authority, operation, rights, powers, and privileges of said sections, and said counties are given and vested with the right, power, and authority of condemnation and eminent domain as provided in said sections," to so hold that, because it provided a remedy against those who were unwilling to convey, that remedy must necessarily be pursued in order to get authority to pay for a right-of-way that the owner was willing upon an advantageous price to convey. The condemnation statutes contemplate an appropriation of land by just such means as were resorted to in this instance. By section 1866 it is provided as follows:

"If, however, such person or company [by section 1880a15, meaning counties also] has actually taken possession of such land, occupying it for the purposes of internal improvement, the owner of such land may petition for a jury of inquest, in which case the same proceedings may be had, as near as may be as hereinbefore provided; or he may sue for damages in the ordinary way, in which case the jury shall lay off the land by metes and bounds and assess the damages, as upon the trial of an appeal from the return of a jury of inquest." Railroad v. Cochrane, 3 Lea, 481; Saunders v. Railroad, 101 Tenn., 209, 47 S. W., 155; Piercy v. Johnson City, 130 Tenn., 235, 169 S. W., 765, L. R. A., 1915F, 1029.

This section and authorities are cited to show that a liability was created for the taking of the property so appropriated and an enlarged remedy given to the landowner. The question, therefore, was not whether the county could act as a jury of view, but whether, having taken and appropriated the land of appellant, and having thereby created a liability against itself which it could not avoid, it could adjust and settle that liability in the form which it assumed to do. We think there can be no question of its right so to do.

Neither was it a question of unliquidated damages, but the amount was fixed by compromise as the value of the land taken, a question of damage which the court had a right to determine. The chancery court, having taken jurisdiction for one purpose, will retain it to do justice and administer complete relief to all parties, and according to its own methods. Chambers v. Railroad, 130 Tenn., 459, 463, 464, 171 S. W., 84.

Section 6016 of Shannon's Code does not apply. Whatever may have been the phraseology employed in describing the transaction, this was in no sense an application for an appropriation, which in term, may mean a gratuity, or at least something which may not be referable to its legal obligations, but this should be treated as an appropriation by the court itself in payment of a recognized legal obligation, which, like the payment of the salary of the county judge, did not require any previous initiation. State for use v. Kelly, 111 Tenn., 589, 82 S. W., 311.

It results, therefore, that the chancellor was in error in each of the particulars assigned. The case is reversed, the original bill dismissed, and the injunction dissolved. Appellant may have judgment against McMinn county for the sum of $200 as the value of the land taken, and McMinn county will be vested with the title to the right-of-way taken from appellant in excess of the twenty-five foot line as originally described in the circuit court proceedings that has been taken possession of and as the same is now physically delineated on the ground. The plaintiff in the original bill and

his security on the injunction bond will pay all the costs of this cause, including interest on $200, which should have been issued, from the filing of the bill, except one-third of cost other than interest, which is adjudged against the county as incident to filing of the cross-bill. The judgment against the county, except for costs, may be satisfied by the issuance and delivery to appellant of the two warrants, one for $180 and the other for $20.

All concur except Clark, J., absent.