# MACON COUNTY v. DIXON et al.—100 S. W. (2d) 5.

Middle Section. July 25, 1936.

Petition for Certiorari denied by Supreme Court, December 4, 1936.

H. B. McGinness, of Carthage, and T. G. Hinson, of Lebanon, for Macon County.

Bass, Berry & Sims, of Nashville, and C. R. Jent, of Lafayette, for Citizens' Bank and J. W. Coley.

Harold Howser, of Gallatin, for John B. Cothron and Mrs. Fred McDonald.

J. R. Smith, of Lafayette, for W. E. Robinson.

DeWITT, J. Macon County filed the bill in this cause on July 25, 1933, to challenge the validity of a large number of outstanding county warrants in the hands of certain defendants named. It is stated in the bill that "the object and purpose of this proceeding is to obtain a judicial determination with respect to the validity or invalidity of certain warrants and/or evidences of indebtedness, the holders of which claim to be obligations of complainant County."

But the prayer of the bill is for a decree adjudging "each of the warrants set forth herein to be null and void and without binding force or effect, and as not constituting obligations against complainant County"; and enjoining the county trustee from paying any of them.

The defendants whose interests or claims are involved on these appeals are: J. W. Coley, John B. Cothron, Mrs. Fred McDonald, W. E. Robinson, and Citizens Bank of Lafayette.

 The chancellor held that all the warrants held by these parties were invalid as affording any right to recover thereon; but, upon the theory of implied obligation to return the benefits which the county had received, or the equivalent thereof, he awarded a recovery against the county of $7,313.95 in favor of Citizens Bank, and of $1,000 in favor of J. W. Coley—both sums with interest from the date of the filing of the bill in this cause. All the other claims of the parties mentioned were disallowed. All of these parties, including Macon County, have appealed.

A county warrant is not a negotiable instrument, but it is a written order by the proper officer upon the trustee of the county to pay a specified sum of money to the person named thereon, or to the bearer. Although it is not negotiable, it is assignable. Bank of Erin v. Houston County, 6 Tenn. App., 638; 15 C. J., 602. It is well established that, when county warrants are regular on their face, they establish prima facie the validity of the claims allowed, and authorize their payment; but they have no other effect. An assignee of such warrants takes subject to the risk as to lawful and proper issuance. Bank v. Houston County, supra. In 15 C. J., p. 598, these general rules are stated as follows:

"A county warrant is merely an order on the treasurer to pay a certain sum of money. While it is prima facie evidence of an indebtedness on the part of the county and of the claim for which it was issued, it is not a conclusive adjudication in the sense that a judicial decision is, and the county is not estopped from afterward questioning its validity"—citing cases.

 In 1931, in the unreported case of Nashville Bridge Company v. Lebanon, this court held that suit might be brought on a county warrant and recovery had on the instrument itself; and this rule was announced by the Supreme Court in Choctaw Culvert & Machinery Co. v. Henderson County, 169 Tenn., 559, 89 S. W. (2d), 753.

Defendants W. E. Robinson, Citizens Bank, Mrs. Fred McDonald, and J. W. Coley each filed an answer and cross-bill, denying any invalidity in their warrants and seeking judgment against the county. Defendant John W. Cothron filed an answer to the same effect, but no cross-bill. Nearly all of the warrants held by these parties are reissued warrants. The details of these warrants will be hereinafter set forth. Classified, they are as follows:

Road warrants ....................................... $7,629.80
Dixon compensation warrants ....................... 3,528.00
These are held by the Citizens Bank.
Road warrants ..................................... $1,000.00
These are held by J. W. Coley.
Five warrants issued to W. E. Robinson ................ $1,996.45
Two warrants issued to John B. Cothron ............. $1,000.00
Warrant issued to Mrs. Fred McDonald ............... $ 735.00

It appears without dispute that all of these parties purchased and paid money for their warrants, believing them to be good and valid evidences of lawful indebtedness of Macon county. No fraud, or knowledge of any fraud on the part of others, in relation to their warrants, is attributed to them. Of course, they are not holders in due course of these warrants as if they were negotiable instruments; but they are in court with clean hands themselves, and their rights, if any, and their claims, must be solemnly respected.

In a brief of counsel for Macon County, the following is said:

"The suit is an outgrowth of an audit that was made during the year 1933 of the records and accounts of the County officials of Macon County, and which disclosed a most unsavory condition of affairs, especially with respect to the accounts of F. P. Dixon, former County Court Clerk. This official resigned his office after ouster proceedings had been filed against him and he and his bondsmen have heretofore paid and agreed to pay to the County and State between eight thousand and nine thousand dollars on account of revenues collected by him and unaccounted for, this, however, having no immediate connection with the present controversy."

But, notwithstanding this last observation, it is sought to throw over much of this controversy the dark shadow of this scandal.

The problem in this cause is how to avoid the results of any previous fraud, apply the law, and yet give due effect to the rights of innocent investors.

Prima facie evidence is that which, standing alone, unexplained or uncontradicted, is sufficient to maintain the proposition affirmed. It is such as, in judgment of law, is sufficient to establish the fact; and, if not rebutted, remains sufficient for that purpose. Of course, it ceases to be sufficient when rebutted or impaired by contrary and better proof. Jones on Evidence (2 Ed.), vol. 1, sec. 19.

This rule causes the weight of the evidence to shift to the other party. There is then a necessity for evidence to answer the prima facie case, or it will prevail. Such evidence must be of equal or greater weight, to balance and control it, or the party will fail. North Memphis Sav. Bank v. Union Bridge & Construction Co., 138 Tenn., 161, 187, 196 S. W., 492.

The law will presume that, in the drawing of a county

warrant, all the officers concerned therewith have performed their duty. Neal Loan & Banking Co. v. Chastain, 121 Ga., 500, 49 S. E., 618. The law will presume in favor of the correct performance of duty. 10 Michie's Digest, 288, cases there cited.

Starting upon the basis of these rules, we will now discuss the evidence and proceed to a determination of the issues.

### Road Warrants Held by Citizens Bank.*

The road warrants held by the Citizens Bank are as follows:

| Warrant Number | Date | Amount |
|---|---|---|
| 331 | May 1, 1931 | $ 500.00 |
| 332 | May 1, 1931 | 500.00 |
| 335 | May 1, 1931 | 500.00 |
| 342 | May 1, 1931 | 1000.00 |
| 343 | May 1, 1931 | 500.00 |
| 344 | May 1, 1931 | 987.72 |
| 345 | May 1, 1931 | 545.08 |
| 346 | May 1, 1931 | 899.23 |
| 347 | May 1, 1931 | 624.02 |
| 348 | May 1, 1931 | 443.76 |
| 349 | May 1, 1931 | 390.00 |
| 350 | May 1, 1931 | 424.14 |
| 356 | June 29, 1931 | 161.10 |
| 358 | Sept. 26, 1931 | 154.75 |

$7629.80

The last two warrants on this list were given for interest.

The chancellor was of the opinion that, in view of the special road laws for Macon County, these warrants are irregular on their face, and, further, that as reissued road warrants they are invalid. He found that no authority had been given for the issuance of the two warrants for interest. However, he found that the Citizens Bank had shown by a preponderance of the evidence that Macon County had received and retained the benefit for which these obligations were originally incurred, exclusive of the interest warrants. Being of the opinion that the indebtedness for which these warrants were reissued had been traced into the purchase of certain road equipment which had been received and retained by the county, and the county had been authorized to create such obligation, he rendered a decree against the county in favor of Citizens Bank for $7,313.95, with interest from the date of the filing of the original bill.

The evidence adduced by the county is insufficient to overturn the finding made by the chancellor that these warrants were issued to the Citizens Bank in substitution for original warrants which were issued by the county in payment for road-building machinery which the county received, retained, and used. The chancellor appears to have been of the opinion that these warrants had been irregularly

issued, although they were signed by the chairman of the county court, W. W. Tuck, and the chairman and secretary of the County Road Commission, H. C. Robertson.

The original road law creating the Macon County Board of Road Commissioners and defining their powers and duties is chapter 87 of the Private Acts of 1913. Section 3 of this act is as follows:

"Be it further enacted, That the Board shall order the payment by the County Trustee by written order of all money collected by taxation or otherwise, and paid out for the construction, improvement, working, or repairs of public roads and bridges. Said orders to be signed by the Chairman and Secretary of the Board after having been allowed by a quorum of the Board, and said order, when properly executed, shall be sufficient authority for the Trustee for the payment thereof."

At the time of the passage of said act, and up to the present time, the general law of the state was and is that it is the duty of the county judge or chairman "to draw, without seal, all warrants upon the county treasury." Code 1932, sec. 769, subsec. (5); Shannon's Code, sec. 517, subsec. 5.

These reissued warrants, as aforesaid, bear the signatures of the chairman of the county court and the chairman and secretary of the Board of Public Road Commissioners. We think that the fact that the offices of chairman and secretary of the board were combined in one and the same person is not such irregularity as would operate to make these warrants irregular upon their face.

The aforesaid act of 1913 was amended by chapter 385 of the Private Acts of 1929 (section 1), the second section of which authorized the said board to purchase all necessary road equipment "and to issue warrants, drawn on the Trustee of said County for the payment of same, even though, at the time of said purchase and delivery there are sufficient funds in the treasury of said county with which to meet payment of said warrants, and such warrants, when there are sufficient funds in said treasury with which to pay same, when presented to the Trustee of such counties shall be recognized, accepted and paid off by said Trustee; provided, however, that at no time shall the outstanding indebtedness incurred by said Board in the issuance of said warrants for said purposes exceed the sum of Seventy-five Hundred Dollars ($7,500.00)."

It appears without dispute that under the authority thus conferred upon it the board purchased on May 13, 1929, from the Tennessee Tractor Company,

One Model No. 40 Clectrac tractor, cabs curtains, howser
 lights and starter,
One No. 88 Galion Leaning Wheel Grader, total ........ $4,833.00
And from the Macon County Auto Company,

Three-1½ ton Chevrolet trucks and three dump bodies, installed, total .................................... $2,667.00
The total being .................................... $7,500.00

The county issued to the Tennessee Tractor Company for the equipment thus purchased from it nine warrants for $500 each, and one for $333. The county issued to the Macon County Auto Company for the property thus purchased from it five warrants of $500 each, and one for $167. Macon County accepted and used this equipment, and part of it was traded off for new equipment for the county and the county still owns part of it. These warrants were purchased from the Tennessee Tractor Company and from the Macon County Auto Company by the Farmers & Merchants Bank & Trust Company of Lafayette, Tenn., on May 23, 1929, at the full face value of said warrants. All this is clearly proven beyond any basis of doubt. The Farmers & Merchants Bank & Trust Company held and owned these warrants until May 1, 1931, although in November, 1930, it had pledged them to the American National Bank to secure loans, but these loans were paid off and the warrants were returned to the Farmers & Merchants Bank & Trust Company. On May 1, 1931, these original warrants were surrendered to officials of the county and new warrants were issued, payable to the order of the Farmers & Merchants Bank & Trust Company. On October 17, 1931, the Citizens Bank acquired by purchase all of the assets of the Farmers & Merchants Bank & Trust Company, including these warrants, paying therefor 100 cents on the dollar.

Two road warrants of $500 each of this series are held by defendant J. W. Coley. He purchased them from Jno. B. Cothran, who purchased them some time after May 1, 1931, from the Farmers & Merchants Bank & Trust Company. These two warrants stand in the same place as the aforesaid warrants held by the Citizens Bank. The chancellor rendered judgment for the amount of them, with interest from the date of the filing of Mr. Coley's cross-bill.

Just prior to the meeting of the quarterly county court of Macon county on the first Monday in April, 1931, some confusion had arisen as to the total amount of outstanding road warrants owing by the county. The court on that date ordered Mr. W. W. Tuck, as chairman of the county court, to advertise for and call in all outstanding interest-bearing road warrants and issue new warrants in their stead, with interest not exceeding 6 per cent. The resolution also ordered that the secretary of the Board of Public Road Commissioners keep all warrant stubs until after they should be audited by the County Revenue Commission and, in case a warrant were issued through error, the same was not to be torn from the book, and, if taken from the book, same was to be fastened to the stub to show just what happened until checked by said County Revenue Commission.

The advertisement was duly made by the chairman of the county court. At his request H. C. Robertson, chairman of the Road Commission, A. W. Jenkins, chairman of the County Revenue Commission, and F. P. Dixon, county court clerk, assisted him in checking, auditing, and reissuing the outstanding road warrants. The evidence shows that these gentlemen met at the courthouse on May 1, 1931, and carefully examined all outstanding road warrants that were presented in detail, for the purpose of ascertaining whether or not they represented valid obligations of Macon County; whether they were due and unpaid; and thereupon they reissued road warrants for those found to be valid, making them payable directly to the holders, and various warrants held by one person being grouped together in convenient amounts and the original number of the old warrant being shown in the face of the new one. The Farmers & Merchants Bank & Trust Company thus surrendered its original warrants and accepted these reissue warrants in place of them.

Included in the warrants held by Citizens Bank are two warrants for $500 each, reissued May 1, 1931, to F. P. Dixon, the warrants being numbered 331 and 332. The chancellor found that these warrants were reissues of warrants issued in 1928 to Harville Supply Company in part payment for the purchase of certain road equipment by Macon County, that is, a 20 horsepower tractor; that those warrants were sold and transferred to F. P. Dixon by the Harville Supply Company through its attorney, J. M. Chamberlain; that F. O. Smith bought these reissued warrants from Dixon and later sold them to the Citizens Bank. Mr. W. W. Tuck and Mr. A. W. Jenkins testified that F. P. Dixon surrendered the original warrants payable to Harville Supply Company, and which they found to be correct as representing a just obligation of the county. The evidence clearly preponderates in support of these findings, and this testimony of these gentlemen is not lacking credibility because they were small stockholders in the Citizens Bank.

In the brief of counsel for the county it is said:

"It is our theory and insistence that the record shows that this reissuance of road warrants on May 1, 1931 was largely a 'cover up' proposition, and that in many instances at least the numbers written into the face of the reissued warrants purporting to identify the originals in lieu of which new warrants were being issued were arbitrarily and falsely inserted. The very manner in which the new warrants were issued shows that it was not in good faith."

This amounts to a charge that the aforesaid officials were engaged in a conspiracy to practice and give effect to fraud. There is no direct evidence reflecting upon the honesty and good faith of Messrs. Robertson, Tuck, and Jenkins.

The burden was on the county to show that these obligations had been paid. The proof shows that the original warrants were

taken up, punched, and delivered to the county; that they were last in its possession. Although it was repeatedly called on to produce them, it failed and refused to do so. The witnesses were cross-examined according to their recollection of details without having the original warrants before them. Mr. Tuck testified that they were placed in a vault in the courthouse, but the evidence does not show that they were destroyed when the courthouse was burned on July 4, 1932. We are left with no explanation why these original warrants were not produced so as to show whether or not the recitals, in the reissued warrants, of the numbers of the original warrants on which they were issued, corresponded correctly.

It is true that the reissued warrants were issued to the parties then holding the original warrants, and that many of them represent a grouping of the amounts of original warrants respectively; but we do not see that this would cast any substantial suspicion upon the good faith of the men who reissued the warrants. The original holders had no longer any interest in them. It is clearly explained that the issuance of new warrants in smaller number by grouping them was done for convenience. This may not have been requested by the holders, but they accepted them and these objections are not substantial.

We hold that the chancellor should have awarded a recovery in favor of Citizens Bank on these reissued road warrants held by it. We find that on these road warrants Citizens Bank is entitled to a decree against the county for $7,313.95, with interest from October 17, 1931, the date of its purchase of them.

It is well settled that the quarterly court of a county has the right to agree to pay interest on its indebtedness evidenced by warrant. Davidson County v. Olwill, 4 Lea, 28; Boshears v. Foster, 154 Tenn., 494, 290 S. W., 387. Such obligation extends until there is money in the treasury to meet the warrant in its regular order, but no longer, under the rule of these cases. The evidence does not show that money has been in the treasury to meet these warrants in their regular order.

On October 1, 1928, the quarterly court of Macon County by resolution authorized the chairman of the county court to make arrangements with a bank or banks of Macon county thereafter to cash all county, road, and poor warrants immediately upon their presentation, without discount, and in consideration thereof pay an amount quarterly thereafter to the bank or banks cashing said warrants equal to 6 per cent. interest on them, daily balances, until paid by the trustee.

On April 3, 1933, another resolution was passed by the quarterly county court reciting as follows:

"Whereas by oversight this Court at its April term 1932 failed to renew its contract with Citizens Bank, Lafayette, Tennessee to pay

interest on daily balances of warrants accumulated therein; Therefore be it resolved, that we do hereby ratify the action of our Ex-Chairman W. W. Tuck, and our present Chairman V. D. Bohanan, in the payment of said balance due the said Bank under our former agreement during the past year, and our present Chairman is hereby authorized to continue the payment of interest to said Bank until further ordered by this Court.''

█ We further find that Citizens Bank is also entitled to recover $315.85 on the warrants of June 29, 1931, and September 26, 1931, issued for interest. No evidence is adduced to show that this interest had not accrued on the road warrants in this amount.

We further find that J. W. Coley is entitled to a decree on the warrants held by him for the sum of $1,000, with interest from the date of the filing of his cross-bill.

Dixon Compensation Warrants, $3,528.

The Citizens Bank holds eight warrants issued to F. P. Dixon by W. W. Tuck, chairman of the county court, amounting to $3,528. These are original warrants. The first is dated October 7, 1930, the last is dated April 10, 1933. Each of these warrants contains the recital, ''On account of services for past quarter.'' During all of this time Mr. Dixon was the county court clerk. As one attack on these warrants has been made on the ground of excessiveness, we will give a list of them as follows

| Number | Date | Amount |
|--------|------|--------|
| K400 | October 7, 1930, | $636.35 |
| K1687 | October 8, 1931, | 556.85 |
| K1899 | January 5, 1932, | 391.40 |
| L143 | April 4, 1932, | 396.40 |
| L270 | July 6, 1932, | 385.45 |
| L946 | October 4, 1932, | 804.20 |
| L980 | October 20, 1932, | 50.00 |
| L1574 | April 10, 1933, | 307.35 |

$3,528.00

The chancellor, as to these warrants, held correctly as follows:

''I find that these warrants are regular and valid on their face and constitute a prima facie case against Macon County for the amount thereof.''

However, the chancellor denied any recovery on these warrants, and, if this is sustained, Dixon got the money on the warrants from the Citizens Bank during the time that the county through its quarterly county court was offering inducements to and encouraging the banks to buy its warrants; and the bank must lose the money which it has invested in these warrants. The county will have paid nothing for the services rendered by the clerk.

█ In dealing with this and other issues in this cause, we do

not ignore the principle that a county warrant is a valid instrument only when those issuing it have the legal authority to issue it or contract the obligation upon which it is founded, and that it is not binding when issued in violation of the law or in fulfillment of an ultra vires contract. As to these Dixon warrants Macon County in this bill charged that F. P. Dixon was not due from Macon County the sums represented by these warrants, or at least, if due any amount for services rendered by him as county court clerk, compensation for which was properly chargeable against Macon County, he was due only a very small per cent. of the amounts represented by said warrants respectively. It also charged that the warrants were not valid because no claims for such services were submitted to or approved by the quarterly court of Macon County, or by any other person or persons authorized to bind the county. These allegations relate to all of the aforesaid warrants, with the exception of the warrant dated October 20, 1932, for $50, which was for "ex-officio service." As to this warrant, it is charged that at no time did the quarterly county court approve any claim made by F. P. Dixon for such service, and thus the issuance of said warrant was wholly without authority.

The Citizens Bank filed its answer also as a cross-bill, alleging that it had been induced by Macon County to purchase these warrants under a written contract with the quarterly county court, without discount, in order to assist the county in financing its obligations, and upon representation by the county officials that the warrants were valid and legal obligations of the county, and estoppel was specially pleaded against the right of the county to repudiate these warrants. It was also alleged that these warrants represented compensation due by Macon County to Dixon, and that, if for any reason the warrants were defective or improperly issued, Citizens Bank, as the assignee thereof, was entitled to recover the amount of each warrant against the county upon the original consideration, and a judgment was sought in the alternative, either upon the warrants themselves or for the amount of the compensation shown by the warrants to have been due and payable to Dixon.

The chancellor held that there was no competent evidence to show that Dixon's claim for compensation had been approved by the quarterly county court, and, further, that no appropriation had been made or acted upon by the court for the payment of the compensation, and therefore no recovery could be had on the warrants themselves. The chancellor then held that Citizens Bank had not shown the amount the county actually owed for services of the county court clerk, and therefore he dismissed the cross-bill as to this claim.

It should be stated here that counsel for the county call attention to the failure of F. P. Dixon to testify in support of these warrants.

The record shows that Mr. Dixon had a stroke of paralysis and was confined in the hospital and was unable to testify. It is not denied that Dixon was county court clerk during that time and rendered services as such official. He was therefore entitled to compensation. ▉ ▉ Warrants may be issued at any time the county incurs a valid obligation. This may be done even when there is no money in the treasury to pay them. No warrant can be lawfully paid unless an appropriation therefor is made.

The law provides that the judge or chairman of the county court shall be the accounting officer and general agent of the county; and that, as such, he shall have power, and it shall be his duty, among others, to audit all claims for money against the county; and to draw all warrants upon the county treasury. Code, section 769, subsecs. (4) and (5).

The chairman of the county court, W. W. Tuck, audited and approved all of the statements of account rendered by F. P. Dixon, and drew warrants therefor in his favor. It does appear that Chairman Tuck did sign some warrants in blank and they were issued by Dixon; but, whether any of these particular warrants were so signed and issued, or not, Chairman Tuck audited and approved the claims on which they were issued. These warrants were issued for a lawful county purpose—the payment of compensation due to the county court clerk as definitely fixed by Code, sections 10692 and 10704. The only thing to be determined was the amount due to the clerk for each quarter. Macon County, in its bill, pleaded, as to these warrants, the violation of only one statute, Code, section 10083, which specifies duties of the county court clerk in regard to revenue, as follows:

"(1) To list in a book provided for the purpose all appropriations and allowances made by the court, all claims of jurors and officers for attendance, or other claim chargeable against the county, setting forth the character, description, and for what purpose made, including the date and amount of the allowance, and the book and page of the minutes where the order may be found. . . .

"(2) To issue orders or certificates to the parties entitled and indorse thereon that they have been registered in his office; and such indorsement shall be necessary to authorize the judge or chairman of the county court to issue his warrant for the amount."

▉ It is insisted that these provisions do not apply to the allowance and payment of compensation of an officer whose fees are fixed by statute; but that they apply only to unliquidated claims against the county. The claim of a juror or a sheriff is unliquidated until it is determined how many days he was in attendance, and, when this is determined, the law fixes his compensation. Likewise, the claim of a county court clerk. It goes through the same process. The evidence shows that each time, with one ex-

ception, Dixon prepared and submitted to a claims committee appointed by the county court a statement of his claim, sworn to. The exception was one time when, during illness of Mr. Dixon, his wife, who was a deputy county court clerk, prepared, swore to, and filed the statement of claim. These claims were examined each time by the committee, the claims were approved by it, and they were reported to the quarterly county court, and that court ordered them paid.

All this evidence as to the submission of statements was excluded by the chancellor on the ground that the statements themselves were the best evidence; but the evidence shows that these statements were returned to Dixon. The county was called on to produce them and it did not do so. They may have been destroyed; in fact, there is evidence tending to show that some records were destroyed. At any rate, the Citizens Bank did not have them, and it was unable to produce them. The testimony of Mrs. Dixon as to the statement prepared and submitted by her was excluded, although it appeared that this statement was turned over by her to V. D. Bohanon, the county chairman; that he was called on to produce it, but refused.

The testimony of S. F. Jones, a member of the claims committee in October, 1932, was that Dixon's claim for services was filed with his committee; that it was on several sheets of paper, itemized and sworn to, with the figures totaled up, one of the claims being for a large amount and the other being for ex officio services; that the committee examined the claims, added them up on an adding machine, allowed both of them, and wrote the fact of such allowance on the back of the itemized statement.

The chancellor also excluded testimony of the witness A. W. Jenkins, who was chairman of the Macon County Auditing Commission, that with respect to the warrant L946 for $804.20, just prior to the meeting of the quarterly county court in October, 1932, he assisted F. P. Dixon in making out his statement as to the amount of compensation due him; that he personally ran each one of the items out and added them up on the adding machine; that the statement showed the amount due for each service; that he compared the claim with the records and verified the items against the records. The same witness testified that as to the warrant 1574 for $307.35, the one based on the statement submitted by Mrs. Dixon, he assisted in making out the itemized claim; that he ran the figures out and added them up, verified each item by looking at the minute book, found that it was correct, and that the total compensation due Dixon was $307.35. All this testimony of Jenkins was excluded by the chancellor on the same ground, that the record was the best evidence.

We think that all this parol evidence should have been admitted

by the chancellor inasmuch as the original documents were either destroyed or were in the possession of the county. We therefore take this evidence into consideration.

The principal attack made by the county was on the warrant for $804.20, dated October 4, 1932. The county has sought to show that this was excessive and represented padded items. While warrants are not negotiable instruments, the fact of non-negotiability only grants permission to the county to set up any defense which it might have had against Dixon. The county furnished no substantial evidence that any of these claims represented by these warrants were padded or were excessive. On the other hand, it appears clearly that the committee of the quarterly county court carefully examined all these claims, found them to be correct, reported them so to the quarterly court, and they were ordered by it to be paid. As to the warrant for $804.20, which was criticized by counsel as "being unusually large," it was explained by Mrs. Dixon as due to the facts that there were three or four extra sessions of court during that quarter; they were building a new courthouse calling for numerous reports of committees; there were three elections held in the county; and there was the trustee's report. The attack upon this warrant is insufficient to overturn the presumption that the statement upon which it was based was correct. We do not think that there is presented here the sole, single question as to whether the chairman of a county court may legally issue a warrant to the county court clerk for his services in the absence of approval of the claim by the quarterly county court. It is true that the evidence does not show that these claims were specifically spread on the minutes of the quarterly county court. On the other hand, it does not show that this was not done. The county had appointed a committee to examine such claims, it examined them and approved them, reported them with its approval to the quarterly county court, and that court adopted the report and ordered them paid. The case of State v. True, 116 Tenn., 294, 95 S. W., 1028, does not control this question. In that case the chairman of the county court of Robertson county employed special counsel to bring a certain lawsuit, without authority having been given or appropriation made by the quarterly county court. There was no statutory authority vested in the county chairman for the employment of special counsel. It was simply held that that as to such a situation the chairman of the county court could not draw a warrant upon the treasury of the county for any funds in the hands of the county trustee to pay the fee of the lawyer so employed. Here the compensation of the county court clerk was authorized by statute. When the amount of it was agreed upon after careful examination, it became a valid, legal obligation of the county, just as much as would the salary of a county judge

be a valid legal obligation, as was held in State v. Kelly, 111 Tenn., 583, 82 S. W., 311. Code, sections 10215-10217, providing that all applications for appropriations by the quarterly court shall be made first to the monthly court sitting last before the meeting of the quarterly court at which the appropriation is to be passed upon, etc., do not apply to such claims as those here in question. In State v. Kelly, supra, it was held that the salary or compensation of a county judge is not such a claim as must be presented and entered on the claim docket thirty days before the meeting of the quarterly county court in order to make an appropriation therefor valid and legal. In Ray v. Oliphant, 1 Tenn. App., 219, it was held that these sections have no application to an appropriation in payment of a recognized legal obligation. The court said: "Whatever may have been the phraseology employed in describing the transaction, this was in no sense an application for an appropriation, which in terms may mean a gratuity, or at least something which may not be referable to its legal obligations, but this should be treated as an appropriation by the court itself in payment of a recognized legal obligation, which, like the payment of the salary of the county judge, did not require any previous initiation," citing State v. Kelly, supra.

We are of the opinion that the county has not carried the burden upon it to show that the claims upon which these compensation warrants were issued were not approved by the quarterly county court and by it ordered to be paid.

As to the question whether or not the quarterly county court made appropriation for the payment of these claims, we will say, first, that the action of the quarterly county court from time to time adopting the recommendation of its claims committee in ordering paid the claims reported by it amounted to an appropriation of the money to pay the claim. Second, the action of the quarterly county court at its July term each year amounted to an appropriation out of county funds of money sufficient to pay the salaries of the county officers, including that of the county court clerk. This action each time consisted of fixing the tax levy and setting apart for various county purposes certain percentages respectively of the taxes—among them being a certain percentage for expenses of the "County proper," this being the general expenses, including compensation of officers, other than those for schools, roads, charity, sinking fund, county fair, etc.

An appropriation of funds is an allotment, assignment, or setting apart of such funds to the use of a particular person or persons, or thing or things for particular purposes. It is the setting apart from the public revenue of a certain sum of money for a specified object in such manner that the executive officers of the government are authorized to use that money and no more for

that object and no other. In other jurisdictions this question has arisen and it has been held that the making of a tax levy by the duly constituted authorities, and the setting aside of a specific percentage of the proceeds of the levy for general county obligations, constitutes an appropriation of the taxes so collected for such purposes. State v. Brian, 84 Neb., 30, 120 N. W., 916; People v. Day, 277 Ill., 543, 115 N. E., 732; People v. New York Central Railroad Company, 314 Ill., 429, 145 N. E., 593. In the Illinois cases thus cited it is specifically held that a levy of a county tax is an appropriation of money; and that the setting apart out of the total of taxes so levied of a percentage thereof for certain purposes amounts to an appropriation of money for such purposes.

Under these facts, and for these reasons, we are of the opinion that, as these compensation warrants are regular on their face and constitute prima facie evidences that they were issued for valid, legal obligations of the county, the burden was on the county to show otherwise and this has not been done. It is not sufficient that Dixon became a defaulter. It does not appear that these warrants were connected with defalcations. The county has induced the Citizens Bank to cash these warrants, but of course this would not deprive it of the right to show, if it could, that the warrants, or any of them, were fraudulent or invalid. The burden was upon the county to show such fact and it has not done so. In our opinion, the chancellor was in error in denying any recovery upon these warrants. The decree entered in this cause will contain a judgment in favor of Citizens Bank against Macon County on these warrants in the sum of $3,528, with interest from the date of the filing of the cross-bill by the Citizens Bank.

The conclusions thus stated are not based upon any estoppel upon the county, for it is not necessary to base them upon such ground, if it is sustainable. But we do approve the following excellent statement, taken from the opinion in County of Jefferson v. McGrath's Executor, 205 Ky., 484, 266 S. W., 29, 30, 41 A. L. R., 586:

"While an estoppel may not lie against the county, yet when the county invokes equitable relief it must conform to the lines of equitable procedure, and come prepared to do equity and to show a superior equity in itself."

Road Warrants Held by John B. Cothron.

These are two reissued road warrants for $500 each, dated November 1, 1932, reciting, "On account of 6% warrant" 376 and 377, respectively. They are signed only by W. W. Tuck, chairman, and countersigned by F. P. Dixon, clerk. They are not regular on their face, for they were not issued by the chairman and secretary of the Board of Public Road Commission, as provided

by section 3 of chapter 87 of the Private Acts of 1913, Regular Session. The burden was therefore on the holder of these warrants to show that they represent just and valid obligations of the county. No cross-bill was filed by Cothron seeking judgment on these warrants. He merely denied by answer the averments tending to show that these were invalid warrants.

The attack made upon these warrants is: That "no valid consideration passed at the time of the issuance of said warrants on November 1, 1932, or at any other time, from the defendant John B. Cothron, to complainant County affording any basis for the issuance of said warrants or either of them, to him;" that no claim was presented to or approved by the quarterly county court affording a basis for or authorizing the issuance of the originals of said warrants, or the reissued warrants, as required by law, nor was there any compliance with section 10083, subsections (1) and (2), of the Code, with respect either to the originals or the reissues of said warrants.

In his answer Cothron alleged that he paid a valid consideration for these two warrants, to wit, $1,000, their face value; that these warrants were issued to him upon his surrender of two reissued warrants of like sums, dated in 1931; that he was unable to show to whom the original warrants were issued, as they had been retained or destroyed by the agents of the county. He pleaded an estoppel upon the county. He did not testify. He offered no evidence to prove affirmatively that the law had been complied with, or to refute charges as to fraud. There is evidence that some time after May 1, 1931, he bought these two warrants from the Farmers & Merchants Bank of Lafayette. Mr. Tuck, chairman, who signed these warrants, testified that he did not remember signing them. He admitted that he had signed warrants in blank.

The county is not estopped to question the validity of these warrants. On their face they are invalid. The county cannot be repelled when its officers so plainly exceeded their powers. The recipient of the warrants took them charged in law with this knowledge.

The assignments of error in behalf of defendant Cothron are overruled and that part of the decree of the chancery court as to these warrants is affirmed.

### Warrant Held by Mrs. Fred McDonald.

This is a county warrant for $735 numbered L-1001, reissued to Mrs. Fred McDonald on November 1, 1932, signed by W. W. Tuck, chairman, countersigned by F. P. Dixon, clerk—reciting: "On Account of warrants K1299; K1358; K1331; K1272—Interest at 6%."

In our opinion this warrant is regular on its face, and we cannot agree with the chancellor's conclusion that it does not make

a prima facie case against the county. The burden was therefore on the county to show that it did not represent a valid legal obligation. She bought in good faith from the Farmers & Merchants Bank the four original warrants at face value a short time prior to July 27, 1931; and at the request of the county officials she surrendered them and received therefor this warrant for $735. The original warrants were examined by the chairman of the county court and declared by him to be genuine, as he testifies. They were delivered by him to Clerk Dixon, who tore them up. The record does not show to whom these warrants were payable or for what purposes they were issued. It does not show that they were in any particular spurious warrants. It is true that Mrs. McDonald's husband, who represented her in these transactions, kept some memorandum of these four original warrants but did not note therein the names of the payees. It cannot be reasonably thought that Mr. McDonald would knowingly invest his wife's money in spurious or fraudulent warrants.

The county produced no evidence to sustain its charges of want of authority to issue this warrant, or of lack of consideration therefor passing to the county; or of failure to present to the quarterly county court the claims upon which the original warrants were based; or of failure to comply with Code, section 10083, subsecs. (1) and (2). The presumption of validity is therefore standing in favor of this claimant. There is no substantial evidence casting suspicion upon this warrant. It is a wholesome rule that the burden in such a case be upon the county, for it should have records showing to whom the original warrants were payable and for what purposes, even if the warrants themselves had been destroyed; and, if those records had been destroyed by fire or otherwise, a holder of a warrant regular on its face has the greater equity in not being required to prove what the records showed when he would be powerless to do so, either from the withholding or from the destruction of the records.

It results that the decree of the chancery court as to this warrant is reversed; and a decree will be entered in this court against the county of Macon in favor of Mrs. Fred McDonald for $735, with interest from November 1, 1932.

### Warrants Held by W. E. Robinson.

 These are five county warrants reissued as of November 1, 1932, to W. E. Robinson as payee—signed by W. W. Tuck, chairman, and countersigned by F. P. Dixon, clerk. They are as follows:

| Number | Amount | Original Warrant Recited |
|--------|--------|--------------------------|
| L1005 | $367.40 | K1043 and J618 |
| L1006 | 430.65 | K683 and K391 |

| L1007 | 389.90 | K565 and K165 |
| L1008 | 296.40 | K299 and K518 |
| L1009 | 512.10 | K1512 and K1511 |

These warrants are regular upon their face; but the county has proved by the testimony of Chairman Tuck that they were signed by him in blank, having full confidence in F. P. Dixon, and that he was not present when these warrants were issued. From this it is evident that he knew nothing of the original warrants, did not examine them, and did not pass upon the validity of them as obligations of the county. This fact alone shifts the burden to the claimant to establish his claim upon these warrants. Furthermore, there is a very striking and suspicious coincidence in the total of the first three of these warrants, $1,187.95, with the total of these warrants fraudulently issued by F. P. Dixon in October, 1932, by filling in warrants which had been signed in blank by W. W. Tuck, chairman. It appears conclusively from the record that these warrants are fraudulent. They are as follows:

October 13, 1932, S. C. Toof & Company _____ $387.40;
October 13, 1932, Standard Printing Co. _____ 435.75;
October 15, 1932, Foster & Parkes Company _____ 364.80

The total of these warrants _____ $1,187.95

They have never been presented to the county for payment. There is evidence in the testimony of T. T. Tucker, a former member of the Macon County Revenue Commission, that the claimant Robinson told him that Dixon induced him to come to Nashville to buy some warrants at a discount and Dixon went with him; that he bought three warrants, totaling $1,187.95, from a man named Callahan or Brisbo, he did not remember which; that he paid $1,100 for these warrants. The burden was upon Mr. Robinson to show that these first three reissued warrants were not issued to him to cover up the fraud of Dixon in issuing, without the knowledge of the county chairman, the three warrants to the concerns named, and which the evidence showed they knew nothing of, and the proceeds of which they never claimed. Mr. Robinson did not testify. Furthermore, as these warrants were irregularly issued, the burden was on Mr. Robinson, as aforesaid, to show that they represent valid legal obligations, and he has not carried this burden. All the argument made to the effect that the county chairman alone could issue these warrants without authority from the quarterly county court, is beside the question, in view of the proof that the county chairman signed these warrants in blank and Dixon filled them out and issued them without his knowledge.

In view of these facts, there is no basis upon which the claim of estoppel upon the part of the county could be sustained. The county could not be estopped by the fraud of its officer in

this manner. The defendant Robinson has not such equities as would prevail over those frauds, though he was not consciously a party thereto. The decree of the chancery court holding these warrants invalid and enjoining the payment of them is affirmed.

A decree will be entered in this court in accordance with the findings and conclusions hereinbefore set forth. The appellants Mrs. Fred McDonald and Citizens Bank will be relieved by said decree of the payment of any of the costs in the chancery court or in this court, and all costs adjudged against them will be adjudged against the County of Macon. The adjudication of costs against J. B. Cothron and W. E. Robinson in the chancery court is affirmed. Each of them will pay one-tenth of the cost of the appeal in this cause, to be adjudged also against the sureties respectively on their appeal bonds. If desired by counsel, the cause will be remanded to the chancery court of Macon County for any further proceedings, in conformity herewith which may be deemed necessary.

Faw, P. J., and Crownover, J., concur.